# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

The Cafesjian Family Foundation, Inc.,
individually and on behalf of the Armenian
Genocide Museum and Memorial, Inc.
4001 Tamiami Trial, Suite 425
Naples, Florida 34103

        Plaintiff,

   v.

Armenian Genocide Museum and Memorial,
Inc.
Attention:  Rouben Adalian and/or
REGISTERED AGENT
1140 19th Street NW, Suite 600
Washington, DC 20036

Hirair Hovnanian
Hovsons, Inc.
One Hovchild Plaza
4000 Route 66
Tinton Falls, NJ 07753

Anoush Mathevosian
30 Candy Lane
Great Neck, NY 11023

Van Krikorian
Global Gold Corporation
45 East Putnam Avenue
Greenwich, CT 06830

Armenian Assembly of America, Inc.,
ATTENTION:  REGISTERED AGENT
1140 19th Street NW, Suite 600
Washington, DC 20036

        Defendants.

Civil File No. _____

COMPLAINT

**JURY TRIAL DEMANDED**

The Cafesjian Family Foundation, Inc. ("CFF"), individually and on behalf of the Armenian Genocide Museum and Memorial ("AGM&M"), complains against the AGM&M, Hirair Hovnanian, Anoush Mathevosian, Van Krikorian and the Armenian Assembly of America, Inc. ("Assembly") as follows:

## PARTIES

1.      The Cafesjian Family Foundation is a Florida nonprofit corporation.

2.      AGM&M is a D.C. nonprofit corporation.

3.      The Assembly is a D.C. nonprofit corporation.

4.      Hirair Hovnanian is a resident of New Jersey.

5.      Anoush Mathevosian is a resident of New York.

6.      Van Krikorian is a resident of New York.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332: citizenship is diverse and the amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over all defendants and venue is proper.

## FACTUAL BACKGROUND

**AGM&M's Corporate Structure**

9.      AGM&M was incorporated pursuant to the District of Columbia Nonprofit Corporation Act. Articles of Incorporation Art. IV (Exhibit A).

10.      AGM&M is governed by a Board of Trustees ("Trustees"). Articles of Incorporation Art. VII. The Trustees serve as the Board of Directors of AGM&M for

purposes of the District of Columbia Nonprofit Corporation Act. By-Laws § 2.2 (Exhibit B); Articles of Incorporation Art. VI.

11.    AGM&M has no members. By-Laws § 2.1; Articles of Incorporation Art. V.

12.    The Trustees are appointed by individuals and organizations that contribute or pledge $5,000,000 or more to AGM&M. By-Laws § 2.1; Grant Agreement § 5.2 (Exhibit C). Currently the Trustees exercise a total of six votes.

13.    Pursuant to the charter documents, the Grant Agreement, and by virtue of significant donations and pledges for the benefit of AGM&M, CFF is entitled to appoint Trustees and controls three of the six Trustee votes. By-Laws §§ 2.4, 2.5; Articles of Incorporation Art. IX; Grant Agreement § 5.2(G). CFF has pledged in excess of $17.5 million and has contributed in excess of $14.5 million and loaned $500,000 for the benefit of AGM&M.

14.    Pursuant to the charter documents and the Grant Agreement, Hovnanian is a Trustee of AGM&M and controls one vote. By-Laws §§ 2.4, 2.5; Articles of Incorporation Art. IX; Grant Agreement § 5.2(G). Hovnanian has pledged $5 million and as of September 2006 has contributed $1.5 million for the benefit of AGM&M.

15.    Pursuant to the charter documents and the Grant Agreement, and in recognition of her important and significant early contribution to the AGM&M, Mathevosian is a Trustee of AGM&M and controls one vote. By-Laws §§ 2.4, 2.5; Articles of Incorporation Art. IX; Grant Agreement § 5.2(C). Mathevosian has pledged and contributed $3.5 million for the benefit of AGM&M.

16.    Pursuant to the charter documents and the Grant Agreement, the Assembly is a Trustee of AGM&M and controls one vote.  By-Laws §§ 2.4, 2.5; Articles of Incorporation Art. IX; Grant Agreement § 5.2(D).  Van Krikorian is the Assembly-appointed Trustee.

17.    AGM&M's By-Laws provide that "[p]ersons representing one-half of the aggregate eligible votes shall constitute a quorum at any meeting of the Board of Trustees duly called."  By-Laws § 2.6.  To convene the Trustees, notice of the time and place of meetings must be provided.  *Id.* § 2.14.

18.    The By-Laws further require that "all [AGM&M] questions shall be decided by an 80 percent affirmative vote of the Trustees present at a meeting where a quorum is present."  *Id.* § 2.7.

19.    On August 31, 2007, AGM&M announced that phase I contracts had been awarded to two design firms.  The contracts are supposedly intended to initiate the development of a museum at the site of the former National Bank of Washington.

20.    The decisions to award phase I contracts and to initiate the development at the site of the former National Bank of Washington were apparently made by a planning, development and building committee that was created during a rump Trustee meeting on May 7, 2007.

21.    Notice of the May 7, 2007 meeting was provided by letter that was faxed to the CFF Trustee designee on May 1, 2007.  The items listed on the agenda included (a) the chairman's report and update, (b) a financial report, (c) the authorization of a planning, development and building committee, and (d) election of officers.  (Exhibit D).

4

22.    The meeting occurred on May 7, 2007.    Hovnanian, Mathevosian, and Krikorian (on behalf of the Assembly), who each control one Trustee vote, and John Waters, the CFF designated Trustee who controls three Trustee votes, attended the meeting. Waters attended by telephone.

23.    Immediately upon being convened, the meeting departed from the agenda and attacked Waters regarding the ramifications of an unrelated litigation involving CFF. Waters, without counsel present, declined to be subjected to the grilling that was being perpetrated. Notably at least two lawyers were present on behalf of the Trustees who were challenging Waters.

24.    Hovnanian, Mathevosian and Krikorian (on behalf of the Assembly) then prevented Waters, as the CFF designated Trustee, from participating in the May 7, 2007 meeting by trumping up conflict of interest charges.    Waters objected to this exclusion, requested an adjournment, and ultimately departed the meeting under protest.

25.    The exclusion of the CFF designated Trustee from the May 7, 2007 meeting and the subsequent continuation of the May 7, 2007 board meeting in the absence of the CFF designated Trustee violated AGM&M by-laws and applicable law.

26.    CFF has requested the minutes and recordings from the entire May 7 meeting. AGM&M has withheld those corporate records.

27.    Following the ostracization of the CFF designated Trustee, the remaining Trustees apparently voted to create a planning, development and building committee and to delegate significant, if not plenary, authority to that committee.    This committee is

supposedly responsible for the planning, building management and development of the museum at the former National Bank Building site. This action taken in the absence of the CFF designated Trustee violates AGM&M by-laws and applicable law.

## AGM&M and the Grant and Transfer Agreements

28.    From 2000 to 2003, the Assembly and CFF cooperated to promote and develop a museum and memorial to commemorate the Armenian Genocide. In 2003, an independent entity, the AGM&M, was incorporated to achieve that purpose.

29.    AGM&M was created to:

> further educational purposes through its activities, which will include, but are not limited to, the following: to own, operate, and maintain a permanent museum and memorial to the victims and survivors of the Armenian Genocide; to commemorate, remember, study, and interpret the particular and universal lessons of the Armenian Genocide and related issues, including those of contemporary significance; to secure universal affirmation of the Armenian Genocide; to support the prevention of genocide; and to present permanent, rotating, and traveling exhibits, as well as memorial and public programs, in furtherance of these purposes.

Articles of Incorporation Art. IV.

30.    With contributions substantially funded by CFF's generosity, the former National Bank Building had been acquired as a site for the museum and memorial. CFF and the Assembly soon concluded that the bank building and parcel alone would not be sufficient to house the project necessary to achieve AGM&M's stated purpose. To provide the real estate necessary for a proper memorial, CFF and the Assembly then executed the Grant Agreement. Pursuant to this agreement, CFF committed to make significant charitable grants, some to the Assembly, for the purpose of providing an appropriate site. The CFF

grants and pledges were in excess of $15 million. The Grant Agreement obligated the Assembly to expend all CFF contributions to purchase the various properties on which the AGM&M would be developed.

31.    Pursuant to the Grant Agreement, the various properties could "only be used as part of the AGM&M, subject to plans for the AGM&M approved by the Board of Trustees of Armenian Genocide Museum & Memorial, Inc." Grant Agreement § 3.1(A). The Grant Agreement requires CFF's participation "in all material decisions regarding the Memorial." *Id.* § 3.2(C).

32.    To separate AGM&M from the Assembly, those entities entered into the Transfer Agreement. The Transfer Agreement effected a conveyance of the real property on which the AGM&M would be developed as well as other assets and liabilities, including all pledges from the Assembly to AGM&M.

33.    CFF's grant obligations were conditioned upon AGM&M's agreement to use these properties "in furtherance of AGM&M's stated charitable purpose." Transfer Agreement § 4.6. AGM&M also agreed to "honor all of the existing [CFF] donor requirements existing at the time of transfer," including the requirement that the CFF designated Trustee participate in all material decisions relating to the museum and memorial. Grant Agreement § 5.3; *see also* Transfer Agreement § 1.2 (Exhibit E).

34.    Like the By-Laws, the Transfer Agreement requires 80% Trustee approval for actions. Transfer Agreement § 3.4(E).

## COUNT I:  ULTRA VIRES ACT
### (CFF individually against defendant AGM&M)

35.    CFF is entitled to appoint up to three Trustees and controls three Trustee votes. The Trustees also serve as Directors of AGM&M.

36.    The delegation of meaningful authority by the AGM&M Trustees to any committee requires an 80 percent affirmative vote of the Trustees present at a properly noticed meeting at which a quorum is present.  Impeccable compliance with the super majority provision is required for this action because the AGM&M's singular purpose is the development of a museum and memorial to commemorate the Armenian Genocide.

37.    The exclusion of the CFF designated Trustee requires an 80 percent affirmative vote of the Trustees present at a properly noticed meeting where a quorum is present.

38.    On May 7, 2007, a quorum of six Trustee votes was present.  Three AGM&M Trustees purported to create and to delegate authority to a planning, development and building committee.  The CFF designated Trustee, who controls the other three votes, attended the May 7, 2007 meeting but was denied the opportunity to vote on the proposed building committee.  After being subjected to filibustering and brow-beating, the CFF designated Trustee was driven out of the meeting, under protest.

39.    The exclusion of the CFF designated Trustee from the May 7, 2007 meeting was improper, unfair and ultra vires under common law and the District of Columbia Nonprofit Corporation Act, D.C. Code § 29-301.06.

40.     The creation of a planning, development and building committee and the delegation of fundamental Trustee prerogative to that committee in the absence of the CFF designated Trustee participation was improper, unfair and ultra vires under common law and the District of Columbia Nonprofit Corporation Act, D.C. Code § 29-301.06.

41.     Being in excess of the rump quorum's authority, these ultra vires actions are null and void, and AGM&M must be enjoined from pursuing any further development of the museum and memorial without proper Trustee authorization.

## COUNT II:  DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY
### (CFF on behalf of AGM&M against defendants Hovnanian, Mathevosian, Krikorian and the Assembly)

42.     The District of Columbia Nonprofit Corporation Act authorizes directors of nonprofit corporations to bring derivative actions on behalf of the corporation against incumbent trustees of a corporation governed by the Act.

43.     Hovnanian, Mathevosian, Krikorian and the Assembly, by reason of their positions as fiduciaries, owe duties to AGM&M, its directors and trustees of undivided loyalty, good faith, fair dealing, due care, candid disclosure and diligence in the management and administration of AGM&M's affairs.

44.     Hovnanian, Mathevosian, Krikorian and the Assembly have breached their fiduciary duties to AGM&M, its directors and trustees by excluding the CFF designated Trustee from the May 7, 2007 meeting, by approving and implementing plans to develop the museum and memorial at the National Bank site without corporate authority, without proper corporate purpose, and without regard to the requirements of AGM&M's by-laws and the District of Columbia's Nonprofit Corporation Act, and by abrogating Trustee authority over

AGM&M's fundamental purpose in favor of a planning, development and building committee with apparent accountability to no one.

45.    As a direct and proximate cause of this breach of fiduciary duty, AGM&M has sustained, and will continue to sustain, substantial harm.

46.    Hovnanian, Mathevosian, Krikorian and the Assembly are liable to AGM&M as a result.

47.    The wrongs complained of were unlawful, ultra vires and not the product of a valid exercise of business judgment; any demand by CFF to the Board of Directors would have been futile because either the Trustees would be deadlocked or Hovnanian, Mathevosian, Kirkorian and the Assembly would continue to exclude the CFF designated Trustee from participation in the formulation of the Trustees' response.

## COUNT III:  DERIVATIVE CLAIM FOR WASTE OF CORPORATE ASSETS
### (CFF on behalf of AGM&M against defendants Hovnanian, Mathevosian, Kirkorian and the Assembly)

48.    The District of Columbia Nonprofit Corporation Act authorizes directors of nonprofit corporations to bring derivative actions on behalf of the corporation against incumbent trustees of a corporation governed by the Act.

49.    Hovnanian, Mathevosian, Krikorian and the Assembly owe to AGM&M the obligation to protect AGM&M's assets from undue loss or waste and to utilize these assets as required by AGM&M's by-laws and to fulfill AGM&M's stated purpose.

50.    Hovnanian, Mathevosian, Krikorian and the Assembly have breached their obligation to AGM&M and wasted corporate assets, by, among other things, knowingly or

recklessly proposing, implementing, agreeing to, approving, and ratifying the decisions to authorize the creation and delegation of authority to a planning, development and building committee and to develop the museum and memorial at the National Bank of Washington site, without corporate authority to do so, without proper corporate purpose, and without regard to the requirements of AGM&M's by-laws and the District of Columbia's Nonprofit Corporation Act.

51.    As a direct and proximate result of this waste of corporate assets, AGM&M has sustained, and will continue to sustain, substantial harm.

52.    Hovnanian, Mathevosian, Krikorian and the Assembly are liable to the AGM&M as a result of these acts.

53.    The wrongs complained of were unlawful, ultra vires and not the product of a valid exercise of business judgment; any demand by CFF to the Board of Directors would have been futile because either the Trustees would be deadlocked or Hovnanian, Mathevosian, Kirkorian and the Assembly would continue to exclude the CFF designated Trustee from participation in the formulation of the Trustees' response.

### COUNT IV:  DERIVATIVE CLAIM FOR ABUSE OF CONTROL
**(CFF on behalf of AGM&M against defendants Hovnanian, Mathevosian, Krikorian and the Assembly)**

54.    The District of Columbia Nonprofit Corporation Act authorizes directors of non-profit corporations to bring derivative actions on behalf of the corporation against incumbent trustees of a corporation governed by the Act.

55.    Hovnanian, Mathevosian, Krikorian and the Assembly have abused their control and influence over AGM&M by excluding the CFF designated Trustee from the May

11

7, 2007 meeting, by approving and implementing plans to develop the museum and memorial at the National Bank of Washington site without corporate authority to do so, without proper corporate purpose, and without regard to the requirements of AGM&M's by-laws and the District of Columbia's Nonprofit Corporation Act and by abrogating Trustee authority over AGM&M's fundamental purpose in favor of a planning, development and building committee with apparent accountability to no one.

56.     As a direct and proximate cause of this abuse of control, AGM&M has sustained, and will continue to sustain, substantial harm.

57.     Hovnanian, Mathevosian, Krikorian and the Assembly are liable to AGM&M as a result.

58.     The wrongs complained of were unlawful, ultra vires and not the product of a valid exercise of business judgment; any demand by CFF to the Board of Directors would have been futile because either the Trustees would be deadlocked or Hovnanian, Mathevosian, Kirkorian and the Assembly would continue to exclude the CFF designated Trustee from participation in the formulation of the Trustees' response.

### COUNT V:  DERIVATIVE CLAIM FOR FRUSTRATION OF PURPOSE
**(CFF on behalf of AGM&M against defendants Hovnanian, Mathevosian, Krikorian and the Assembly)**

59.     The District of Columbia Nonprofit Corporation Act authorizes directors of nonprofit corporations to bring derivative actions on behalf of the corporation against incumbent trustees of a corporation governed by the Act.

60.     The AGM&M was organized and operates exclusively for charitable, educational, and other beneficial purposes to, among other things, "own, operate, and

maintain a permanent museum and memorial to the victims and survivors of the Armenian Genocide," secure universal affirmation of the Armenian Genocide, and establish a memorial and public programs to further these purposes. Articles of Incorporation Art. IV.

61.    CFF made significant grants and pledges for the purpose of creating a museum and memorial dedicated to the memory of the Armenian Genocide:  a museum and memorial developed with the broadest possible participation and support of the Armenian Community and a museum and memorial that properly and significantly presents the tragedy of the Armenian Genocide, that would serve as a permanent reminder in our Nation's capitol of the horrific atrocities committed against the Armenian people.  CFF's obligation to make these grants was conditioned on AGM&M's commitment that CFF would participate in all material decisions relating to the museum and memorial.

62.    The Grant Agreement further mandates that the grant properties be used only as part of the AGM&M and that all plans for the AGM&M be approved by the Trustees.

63.    Hovnanian, Mathevosian, Krikorian and the Assembly have refused to allow CFF to participate in material decisions relating to the museum and memorial by excluding the CFF designated Trustee from the May 7, 2007 meeting, by approving and implementing plans to develop the museum and memorial at the National Bank of Washington site without corporate authority to do so, without proper corporate purpose, and without regard to the requirements of AGM&M's by-laws and the District of Columbia's Nonprofit Corporation Act and by abrogating Trustee authority over AGM&M's fundamental purpose in favor of a planning, development and building committee with apparent accountability to no one.

64.    This interference has frustrated the corporate purpose of AGM&M.

13

65. As a direct and proximate cause of this abuse of control, AGM&M has sustained, and will continue to sustain, substantial harm.

66. Hovnanian, Mathevosian, Krikorian and the Assembly are liable to AGM&M as a result.

67. The wrongs complained of were unlawful, ultra vires and not the product of a valid exercise of business judgment; any demand by CFF to the Board of Directors would have been futile because either the Trustees would be deadlocked or Hovnanian, Mathevosian, Kirkorian and the Assembly would continue to exclude the CFF designated Trustee from participation in the formulation of the Trustees' response.

WHEREFORE, CFF, on behalf of itself individually and on behalf of AGM&M, requests the following relief:

1. Declare that:

   (a) The actions by three of the AGM&M Trustees in the absence of the CFF designated Trustee to create a planning, development and building committee and delegate fundamental Trustee prerogative to that committee are ultra vires;

   (b) Hovnanian, Mathevosian, Krikorian and the Assembly have breached their fiduciary duties to AGM&M;

   (c) Hovnanian, Mathevosian, Krikorian and the Assembly have wasted AGM&M's corporate assets;

   (d) Hovnanian, Mathevosian, Krikorian and the Assembly have abused their control of AGM&M;

14

(e)    Hovnanian, Mathevosian, Krikorian and the Assembly have frustrated the corporate purpose of AGM&M;

2.    Enjoin AGM&M from any further development of the museum and memorial without proper Trustee notice, participation and approval;

3.    Award AGM&M money damages against defendants Hovnanian, Mathevosian, Krikorian and the Assembly, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, including but not limited to disgorgement of any assets expended to pursue these ultra vires acts and transactions and reimbursement to AGM&M of costs expended to pursue these ultra vires acts and transactions; and

4.    Award to CFF and AGM&M all costs and expenses incurred to pursue this action on behalf of AGM&M.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 28, 2007

**HOGAN AND HARTSON LLP**

By: _____

Ty Cobb (D.C. Bar No. 270736)
Peter C. Lallas (D.C. Bar No. 495944)
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600


**BRIGGS AND MORGAN, P.A.**

Timothy R. Thornton (Minn. #109630)
Molly M. Borg (Minn. #0331922)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2157
(612) 977-8400


**ATTORNEYS FOR PLAINTIFF
THE CAFESJIAN FAMILY
FOUNDATION**

## VERIFICATION

I, John J. Waters, Jr. am an officer and director of The Cafesjian Family Foundation, Inc. I serve as the Secretary and Treasurer and as Vice President. The factual allegations of the foregoing Complaint are true and correct to the best of my knowledge, information and belief. The basis of my knowledge, information and belief is personal knowledge, information from The Cafesjian Family Foundation business records, and reports to me from other The Cafesjian Family Foundation employees in the regular course of business.

_____
John J. Waters, Jr.

Subscribed and sworn to before
me this 27th day of September, 2007.

_____
Notary Public

VALERIE T. HERRING
Notary Public
Minnesota
My Commission Expires January 31, 2011

CONFIDENTIAL

## TRANSFER AGREEMENT

This Transfer Agreement (this "Agreement") is made as of November 1, 2003, by and between:

Armenian Assembly of America, Inc. (the "Grantor"), a District of Columbia nonprofit corporation; and

Armenian Genocide Museum and Memorial, Inc. ("AGM&M, Inc."), a District of Columbia nonprofit corporation.

## BACKGROUND

In order to complete the building of the Armenian Genocide Museum and Memorial (the "AGM&M"), the Grantor desires to transfer all of its real property, pledges, cash, and other assets acquired for the purpose of building the AGM&M to AGM&M, Inc. under the terms and conditions set out in this Agreement.

The parties, therefore, agree as follows:

## TERMS

SECTION 1  Grant.

1.1    Nature of Grant.

    (A)    The Grantor shall contribute to AGM&M, Inc., all of its rights, title, and interest in and to all cash, pledges, real property, tangible property, intangible property, and other assets contributed to the Grantor and/or held by the Grantor for the development, renovation, and construction of the AGM&M, as detailed on Schedule A (the "Grant").

    (B)    Copies of all outstanding grant agreements between the Grantor and its donors relating to the AGM&M are attached to this Agreement as Exhibit A-X.

    (C)    The approximate aggregate value of the Grant is $27,784,901. Within this aggregate estimate the value of the real property is $7,250,000.00; the value of the pledges as of October 30, 2003, is $19,422,044; and the value of cash and other assets on hand is approximately $669,528.

1.2    Other Rights and Obligations Transferred.

    (A)    AGM&M, Inc. must honor all of the Grantor's donor requirements existing at time of transfer, or in the alternative, obtain donor consent

**EXHIBIT E**

to the transfer and any modification of donor terms.

(B) Without limiting Section 1.2(A) of this Agreement, AGM&M, Inc. assumes and agrees to comply with the Grantor's obligations relating the memorial commemorating the Armenian Genocide under the agreement between Grantor and Gerard L. Cafesjian and The Cafesjian Family Foundation attached to this Agreement as Exhibit A.

(C) The Grantor hereby assigns to AGM&M, Inc. the Grantor's right to appoint Trustees of the Armenian National Institute, Inc.

(D) If at the time this Agreement is executed the promissory note executed by Grantor in favor of the The Cafesjian Family Foundation on March 17, 2000 in the amount of $500,000 (the "Promissory Note") or any promissory note issued to replace the Promissory Note (the "Replacement Promissory Note") is still outstanding, the Promissory Note or the Replacement Promissory Note, whichever is still outstanding, shall be transferred to AGM&M, Inc. as part of the Grant.

1.3 Use of Grant. AGM&M, Inc. shall use the Grant solely to develop, construct and operate the AGM&M.

1.4 Transfer of Grant.

(A) The Grantor shall begin to transfer the assets that compose the Grant upon the execution of this Agreement.

(B) The Grantor shall diligently undertake to complete the transfer of all titles, obtain all consents or other permissions, and otherwise act to effect the completion of the Grant.

SECTION 2   General Conditions and Covenants.

2.1 Use of Grant Funds. AGM&M, Inc. shall use the Grant only for purposes described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code").

2.2 Private Foundation Grants. AGM&M, Inc. may not use any portion of the Grant that has been received from a private foundation, as defined by Section 509(a) of the Code, to pay for an attempt to influence legislation within the meaning of Section 4945(e) of the Code.

2.3 Financial Records. AGM&M, Inc. shall maintain financial records regarding the use of the Grant consistent with generally accepted accounting practices and shall provide the Grantor access to those records upon request.

2.4 Reports and Records.



(A)    Until completion of the AGM&M and operation of the completed facility for 12 months, AGM&M, Inc. shall provide written reports to the Grantor at least quarterly.

(B)    Such reports shall include details on:

    (i)    the amount and nature of the expenditures made from the Grant; and

    (ii)    the progress made in acquiring, designing, renovating, and utilizing the Property and completing the AGM&M.

(C)    In such reports, an officer of AGM&M, Inc. shall certify its compliance with the terms and conditions of this Agreement.

(D)    AGM&M, Inc. shall maintain complete records of receipts and expenditures relating to and the acquisition, design, and renovation of the real property portion of the Grant and the construction of the AGM&M for at least four years after the Grant has been expended, and such records must be made available to the Grantor through its representatives for inspection and copying at all reasonable times.

2.5    <u>Access to Public Spaces</u>. Upon written and reasonable notice, AGM&M, Inc. shall provide Grantor with access to the public spaces within the AGMM free of charge at least six times annually for tours, dinners or other events consistent with the nature of the AGMM in the sole judgment of the AGM&M, Inc., each not lasting longer than six hours, all costs of such events to be borne by Grantor. Grantor shall not have the right to assign, lease or otherwise transfer this right to any other entity or person. This right of access shall expire if Grantor ever ceases to be an organization described in Section 501(c)(3) of the Code.

2.6    <u>Narrative</u>. Grantor and AGM&M, Inc. shall use their best efforts to jointly prepare a narrative on the creation of the AGMM (the "Narrative") for approval by both Grantor and AGM&M, Inc. Upon approval by both Grantor and AGM&M, Inc. and completion of the AGMM, AGM&M, Inc. shall permanently and prominently memorialize the Narrative within the AGMM. AGM&M, Inc. shall include the Narrative or a condensed version thereof in all major publications and public presentations of AGM&M, Inc. that reference the creation of the AGMM.

2.7    <u>No Other Rights or Obligations</u>. Beyond the rights and obligations specifically stated in this Agreement, Grantor disclaims any legal right to control or otherwise influence AGM&M, Inc.'s use of the Grant provided in accordance with this Agreement.

SECTION 3   Conditions Related to AGM&M, Inc.

The Grantor's obligation to make the Grant is subject to the following conditions:

3.1   Tax-Exempt Status.   AGM&M, Inc. must be a tax-exempt organization described in Section 501(c)(3) of the Code, as amended, and may not be a private foundation within the meaning of Section 509(a) of the Code.

3.2   Tax Status Documentation.   AGM&M, Inc. shall deliver to the Grantor a copy of its IRS application for recognition of exemption (when prepared), its IRS determination letter (when received), and such other documentation reasonably requested by the Grantor.

3.3   Evidence of Satisfaction.   AGM&M, Inc. has provided evidence to the Grantor in a form reasonably acceptable to the Grantor that the Assembly is in the process of satisfying the terms and conditions of this Agreement.

3.4   Governance of AGM&M, Inc.

   (A)   AGM&M, Inc. must be controlled by a Board of Trustees (the "Board of Trustees") appointed by individuals and organizations that contribute $5,000,000 or more ("Major Donors") to AGM&M, Inc. or any predecessor in interest.

   (B)   Each Major Donor is entitled to receive one seat on the Board of Trustees and one vote for each $5,000,000 contributed to AGM&M, Inc. (whether directly or as a result of this Agreement), except that the Grantor shall only accept one seat on the Board of Trustees and one vote regardless of the amount contributed by Grantor to AGM&M, Inc.

   (C)   In recognition of her important and significant early contribution to the project, Anoush Mathevosian is included as a Major Donor and voting member of the AGM&M, Inc. Board of Trustees.

   (D)   In recognition of its efforts in establishing the AGM&M, the Assembly is included as a Major Donor and a voting member of the AGM&M, Inc. Board of Trustees.

   (E)   Decisions of the AGM&M, Inc. Board of Trustees require an 80% vote to carry, unless other wise specified in the Articles or Bylaws of the corporation.

   (F)   Each individual Major Donor may appoint both successors to the Board of Trustees and successors to his or her right to appoint successors to the Board of Trustees. Each subsequent successor Trustee has the rights of a Trustee.



(G)   The initial Board of Trustees of AGM&M, Inc., consists of: Anoush Mathevosian, Hirair S. Hovnanian, Robert A. Kaloosdian, and Gerard L. Cafesjian.

## SECTION 4  Representations by AGM&M, Inc.

AGM&M, Inc. hereby represents and warrants to the Grantor as follows:

4.1   **Tax Status.** AGM&M, Inc. is an organization described in Section 501(c)(3) of the Code and an organization that is not a private foundation within the meaning of Section 509(a) of the Code, and AGM&M, Inc. shall apply by November 30, 2003 to the Internal Revenue Service for recognition of this status.

4.2   **Organization.** AGM&M, Inc. is a nonprofit corporation, duly organized, validly existing and in good standing under the laws of the District of Columbia.

4.3   **Power.** AGM&M, Inc. has full power to enter into this Agreement, to agree to its obligations hereunder, and to accept the Grant.

4.4   **Actions.** All actions required to be taken by AGM&M, Inc. to enter into this Agreement and to perform its obligations hereunder have been duly and properly taken.

4.5   **Authorization.** This Agreement has been duly and validly authorized by all necessary action of AGM&M, Inc. and constitutes, when executed, a valid and binding obligation of AGM&M, Inc..

4.6   **Furtherance of Charitable Purposes.** The receipt and use of the Grant pursuant to this Agreement is solely in furtherance of AGM&M, Inc.'s stated charitable purposes.

## SECTION 5  General Provisions.

5.1   **Notice.**

(A)   Any notice, request, report, instruction, or other document to be given under this Agreement by any party to the other parties must be in writing and is deemed effective:

(i)    upon personal delivery, if delivered by hand; or

(ii)   three days after the date of deposit in the U.S. mail, postage prepaid; or

(iii)    on the next business day, if sent by prepaid overnight courier service or facsimile transmission.

(B)    Notice sent in accordance with Section 5.1(A) of this Agreement must be addressed as follows:

(i)    If to AGM&M, Inc.:

c/o The Cafesjian Family Foundation, Inc.
15 South Fifth Street
Suite 900
Minneapolis, MN 55402
Fax: 612-359-8994

(ii)    If to the Grantor:

Armenian Assembly of America, Inc.
122 C Street, NW
Suite 350
Washington, DC 20001
Fax: 202-383-9012

(C)    Any party may change the address to which notices are to be sent by providing notice of such change of address to the other parties in the manner described in this Section 5.1.

5.2    Governing Law. This Agreement must be governed by and construed in accordance with the laws of the District of Columbia (the "District") applicable to contracts to be fully performed within the District, without reference to the District's choice-of-law rules.

5.3    Dispute Resolution. Any disputes arising under this Agreement must be settled exclusively by binding arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force.

5.4    Assignments. This Agreement and the rights and obligations of the parties hereunder are personal to the Grantor and AGM&M, Inc. and are not assignable or transferable to any other person, firm or corporation without the consent of the other party.

5.5    Headings. The subject headings used in this Agreement are included for purposes of reference and convenience only and may not affect the construction or interpretation of any of its provisions.

5.6    Entire Agreement.

(A)    This Agreement represents the entire agreement between the Grantor

and AGM&M, Inc. concerning the Grant and all previous agreements, whether written or oral, are superseded by it.

(B)    This Agreement may be modified or waived only by a written agreement between the Grantor and AGM&M, Inc.

(C)    AGM&M, Inc. acknowledges that it is not relying on any representation of the Grantor, except as set forth in this Agreement, and that no representations the Grantor may have made in the past survive.

*{Signatures on next page.}*

IN WITNESS WHEREOF, the parties hereto have caused this Transfer
Agreement to be duly executed as of the day and year first above written.

ARMENIAN ASSEMBLY OF AMERICA, INC.

By: _____     Date: _Nov / 2003_
Hirair S. Hovnanian
Chairman of the Board of Trustees

By: _____     Date: _NOV. 1, 2003_
Peter Vosbikian
Chairman of the Board of Directors

ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.

By: _____     Date: _Nov 1, 2003_
John J. Waters, Jr.
Secretary and Treasurer

8

## TRANSFER AGREEMENT

---

### Schedule A

**Transferred Assets**

(See attached.)

TRANSFER AGREEMENT

## Exhibit A

Grant Agreement with [_____]

(See attached.)

CONFIDENTIAL

## TRANSFER AGREEMENT

This Transfer Agreement (this "Agreement") is made as of November 1, 2003, by and between:

Armenian Assembly of America, Inc. (the "Grantor"), a District of Columbia nonprofit corporation; and

Armenian Genocide Museum and Memorial, Inc. ("AGM&M, Inc."), a District of Columbia nonprofit corporation.

### BACKGROUND

In order to complete the building of the Armenian Genocide Museum and Memorial (the "AGM&M"), the Grantor desires to transfer all of its real property, pledges, cash, and other assets acquired for the purpose of building the AGM&M to AGM&M, Inc. under the terms and conditions set out in this Agreement.

The parties, therefore, agree as follows:

### TERMS

SECTION 1  Grant.

1.1    <u>Nature of Grant</u>

    (A)    The Grantor shall contribute to AGM&M, Inc., all of its rights, title, and interest in and to all cash, pledges, real property, tangible property, intangible property, and other assets contributed to the Grantor and/or held by the Grantor for the development, renovation, and construction of the AGM&M, as detailed on <u>Schedule A</u> (the "Grant").

    (B)    Copies of all outstanding grant agreements between the Grantor and its donors relating to the AGM&M are attached to this Agreement as <u>Exhibit A-X</u>.

    (C)    The approximate aggregate value of the Grant is $27,784,901. Within this aggregate estimate the value of the real property is $7,250,000.00; the value of the pledges as of October 30, 2003, is $19,422,044; and the value of cash and other assets on hand is approximately $669,528.

1.2    <u>Other Rights and Obligations Transferred</u>.

    (A)    AGM&M, Inc. must honor all of the Grantor's donor requirements existing at time of transfer, or in the alternative, obtain donor consent

1

EXHIBIT E

to the transfer and any modification of donor terms.

(B)    Without limiting Section 1.2(A) of this Agreement, AGM&M, Inc. assumes and agrees to comply with the Grantor's obligations relating the memorial commemorating the Armenian Genocide under the agreement between Grantor and Gerard L. Cafesjian and The Cafesjian Family Foundation attached to this Agreement as Exhibit A.

(C)    The Grantor hereby assigns to AGM&M, Inc. the Grantor's right to appoint Trustees of the Armenian National Institute, Inc.

(D)    If at the time this Agreement is executed the promissory note executed by Grantor in favor of the The Cafesjian Family Foundation on March 17, 2000 in the amount of $500,000 (the "Promissory Note") or any promissory note issued to replace the Promissory Note (the "Replacement Promissory Note") is still outstanding, the Promissory Note or the Replacement Promissory Note, whichever is still outstanding, shall be transferred to AGM&M, Inc. as part of the Grant.

1.3    Use of Grant. AGM&M, Inc. shall use the Grant solely to develop, construct and operate the AGM&M.

1.4    Transfer of Grant.

(A)    The Grantor shall begin to transfer the assets that compose the Grant upon the execution of this Agreement.

(B)    The Grantor shall diligently undertake to complete the transfer of all titles, obtain all consents or other permissions, and otherwise act to effect the completion of the Grant.

SECTION 2   General Conditions and Covenants.

2.1    Use of Grant Funds. AGM&M, Inc. shall use the Grant only for purposes described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code").

2.2    Private Foundation Grants. AGM&M, Inc. may not use any portion of the Grant that has been received from a private foundation, as defined by Section 509(a) of the Code, to pay for an attempt to influence legislation within the meaning of Section 4945(e) of the Code.

2.3    Financial Records. AGM&M, Inc. shall maintain financial records regarding the use of the Grant consistent with generally accepted accounting practices and shall provide the Grantor access to those records upon request.

2.4    Reports and Records.

(A)     Until completion of the AGM&M and operation of the completed facility for 12 months, AGM&M, Inc. shall provide written reports to the Grantor at least quarterly.

(B)     Such reports shall include details on:

    (i)     the amount and nature of the expenditures made from the Grant; and

    (ii)    the progress made in acquiring, designing, renovating, and utilizing the Property and completing the AGM&M.

(C)     In such reports, an officer of AGM&M, Inc. shall certify its compliance with the terms and conditions of this Agreement.

(D)     AGM&M, Inc. shall maintain complete records of receipts and expenditures relating to and the acquisition, design, and renovation of the real property portion of the Grant and the construction of the AGM&M for at least four years after the Grant has been expended, and such records must be made available to the Grantor through its representatives for inspection and copying at all reasonable times.

2.5     Access to Public Spaces. Upon written and reasonable notice, AGM&M, Inc. shall provide Grantor with access to the public spaces within the AGMM free of charge at least six times annually for tours, dinners or other events consistent with the nature of the AGMM in the sole judgment of the AGM&M, Inc., each not lasting longer than six hours, all costs of such events to be borne by Grantor. Grantor shall not have the right to assign, lease or otherwise transfer this right to any other entity or person. This right of access shall expire if Grantor ever ceases to be an organization described in Section 501(c)(3) of the Code.

2.6     Narrative. Grantor and AGM&M, Inc. shall use their best efforts to jointly prepare a narrative on the creation of the AGMM (the "Narrative") for approval by both Grantor and AGM&M, Inc. Upon approval by both Grantor and AGM&M, Inc. and completion of the AGMM, AGM&M, Inc. shall permanently and prominently memorialize the Narrative within the AGMM, AGM&M, Inc. shall include the Narrative or a condensed version thereof in all major publications and public presentations of AGM&M, Inc. that reference the creation of the AGMM.

2.7     No Other Rights or Obligations. Beyond the rights and obligations specifically stated in this Agreement, Grantor disclaims any legal right to control or otherwise influence AGM&M, Inc.'s use of the Grant provided in accordance with this Agreement.

## SECTION 3   Conditions Related to AGM&M, Inc.

The Grantor's obligation to make the Grant is subject to the following conditions:

3.1  **Tax-Exempt Status.**  AGM&M, Inc. must be a tax-exempt organization described in Section 501(c)(3) of the Code, as amended, and may not be a private foundation within the meaning of Section 509(a) of the Code.

3.2  **Tax Status Documentation.**  AGM&M, Inc. shall deliver to the Grantor a copy of its IRS application for recognition of exemption (when prepared), its IRS determination letter (when received), and such other documentation reasonably requested by the Grantor.

3.3  **Evidence of Satisfaction.**  AGM&M, Inc. has provided evidence to the Grantor in a form reasonably acceptable to the Grantor that the Assembly is in the process of satisfying the terms and conditions of this Agreement.

3.4  **Governance of AGM&M, Inc.**

(A)  AGM&M, Inc. must be controlled by a Board of Trustees (the "Board of Trustees") appointed by individuals and organizations that contribute $5,000,000 or more ("Major Donors") to AGM&M, Inc. or any predecessor in interest.

(B)  Each Major Donor is entitled to receive one seat on the Board of Trustees and one vote for each $5,000,000 contributed to AGM&M, Inc. (whether directly or as a result of this Agreement), except that the Grantor shall only accept one seat on the Board of Trustees and one vote regardless of the amount contributed by Grantor to AGM&M, Inc.

(C)  In recognition of her important and significant early contribution to the project, Anoush Mathevosian is included as a Major Donor and voting member of the AGM&M, Inc. Board of Trustees.

(D)  In recognition of its efforts in establishing the AGM&M, the Assembly is included as a Major Donor and a voting member of the AGM&M, Inc. Board of Trustees.

(E)  Decisions of the AGM&M, Inc. Board of Trustees require an 80% vote to carry, unless other wise specified in the Articles or Bylaws of the corporation.

(F)  Each individual Major Donor may appoint both successors to the Board of Trustees and successors to his or her right to appoint successors to the Board of Trustees. Each subsequent successor Trustee has the rights of a Trustee.



(G) The initial Board of Trustees of AGM&M, Inc., consists of: Anoush Mathevosian, Hirair S. Hovnanian, Robert A. Kaloosdian, and Gerard L. Cafesjian.

## SECTION 4 Representations by AGM&M, Inc.

AGM&M, Inc. hereby represents and warrants to the Grantor as follows:

4.1 Tax Status. AGM&M, Inc. is an organization described in Section 501(c)(3) of the Code and an organization that is not a private foundation within the meaning of Section 509(a) of the Code, and AGM&M, Inc. shall apply by November 30, 2003 to the Internal Revenue Service for recognition of this status.

4.2 Organization. AGM&M, Inc. is a nonprofit corporation, duly organized, validly existing and in good standing under the laws of the District of Columbia.

4.3 Power. AGM&M, Inc. has full power to enter into this Agreement, to agree to its obligations hereunder, and to accept the Grant.

4.4 Actions. All actions required to be taken by AGM&M, Inc. to enter into this Agreement and to perform its obligations hereunder have been duly and properly taken.

4.5 Authorization. This Agreement has been duly and validly authorized by all necessary action of AGM&M, Inc. and constitutes, when executed, a valid and binding obligation of AGM&M, Inc..

4.6 Furtherance of Charitable Purposes. The receipt and use of the Grant pursuant to this Agreement is solely in furtherance of AGM&M, Inc.'s stated charitable purposes.

## SECTION 5 General Provisions.

5.1 Notice.

(A) Any notice, request, report, instruction, or other document to be given under this Agreement by any party to the other parties must be in writing and is deemed effective:

(i) upon personal delivery, if delivered by hand; or

(ii) three days after the date of deposit in the U.S. mail, postage prepaid; or

(iii)    on the next business day, if sent by prepaid overnight courier service or facsimile transmission.

(B)    Notice sent in accordance with Section 5.1(A) of this Agreement must be addressed as follows:

(i)    If to AGM&M, Inc.:

c/o The Cafesjian Family Foundation, Inc.
15 South Fifth Street
Suite 900
Minneapolis, MN 55402
Fax: 612-359-8994

(ii)    If to the Grantor:

Armenian Assembly of America, Inc.
122 C Street, NW
Suite 350
Washington, DC 20001
Fax: 202-393-9012

(C)    Any party may change the address to which notices are to be sent by providing notice of such change of address to the other parties in the manner described in this Section 5.1.

5.2    Governing Law. This Agreement must be governed by and construed in accordance with the laws of the District of Columbia (the "District") applicable to contracts to be fully performed within the District, without reference to the District's choice-of-law rules.

5.3    Dispute Resolution. Any disputes arising under this Agreement must be settled exclusively by binding arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force.

5.4    Assignments. This Agreement and the rights and obligations of the parties hereunder are personal to the Grantor and AGM&M, Inc. and are not assignable or transferable to any other person, firm or corporation without the consent of the other party.

5.5    Headings. The subject headings used in this Agreement are included for purposes of reference and convenience only and may not affect the construction or interpretation of any of its provisions.

5.6    Entire Agreement.

(A)    This Agreement represents the entire agreement between the Grantor

and AGM&M, Inc. concerning the Grant and all previous agreements, whether written or oral, are superseded by it.

(B)    This Agreement may be modified or waived only by a written agreement between the Grantor and AGM&M, Inc.

(C)    AGM&M, Inc. acknowledges that it is not relying on any representation of the Grantor, except as set forth in this Agreement, and that no representations the Grantor may have made in the past survive.

*[Signatures on next page.]*

IN WITNESS WHEREOF, the parties hereto have caused this Transfer Agreement to be duly executed as of the day and year first above written.

ARMENIAN ASSEMBLY OF AMERICA, INC.

By: _____       Date: _Nov  1  2003_
Hirair S. Hovnanian
Chairman of the Board of Trustees

By: _____       Date: _NOV. 1, 2003_
Peter Vosbikian
Chairman of the Board of Directors

ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.

By: _____       Date: _Nov 1, 2003_
John J. Waters, Jr.
Secretary and Treasurer

8

TRANSFER AGREEMENT

## Schedule A

**Transferred Assets**

(See attached.)

TRANSFER AGREEMENT

---

### Exhibit A

Grant Agreement with [_____]

(See attached.)

CONFIDENTIAL

## TRANSFER AGREEMENT

This Transfer Agreement (this "Agreement") is made as of November 1, 2003, by and between:

Armenian Assembly of America, Inc. (the "Grantor"), a District of Columbia nonprofit corporation; and

Armenian Genocide Museum and Memorial, Inc. ("AGM&M, Inc."), a District of Columbia nonprofit corporation.

## BACKGROUND

In order to complete the building of the Armenian Genocide Museum and Memorial (the "AGM&M"), the Grantor desires to transfer all of its real property, pledges, cash, and other assets acquired for the purpose of building the AGM&M to AGM&M, Inc. under the terms and conditions set out in this Agreement.

The parties, therefore, agree as follows:

## TERMS

SECTION 1   Grant.

1.1   Nature of Grant.

(A)   The Grantor shall contribute to AGM&M, Inc., all of its rights, title, and interest in and to all cash, pledges, real property, tangible property, intangible property, and other assets contributed to the Grantor and/or held by the Grantor for the development, renovation, and construction of the AGM&M, as detailed on Schedule A (the "Grant").

(B)   Copies of all outstanding grant agreements between the Grantor and its donors relating to the AGM&M are attached to this Agreement as Exhibit A-X.

(C)   The approximate aggregate value of the Grant is $27,784,901. Within this aggregate estimate the value of the real property is $7,250,000.00; the value of the pledges as of October 30, 2003, is $19,422,044; and the value of cash and other assets on hand is approximately $669,528.

1.2   Other Rights and Obligations Transferred.

(A)   AGM&M, Inc. must honor all of the Grantor's donor requirements existing at time of transfer, or in the alternative, obtain donor consent

1

**EXHIBIT E**

to the transfer and any modification of donor terms.

(B) Without limiting Section 1.2(A) of this Agreement, AGM&M, Inc. assumes and agrees to comply with the Grantor's obligations relating the memorial commemorating the Armenian Genocide under the agreement between Grantor and Gerard L. Cafesjian and The Cafesjian Family Foundation attached to this Agreement as Exhibit A.

(C) The Grantor hereby assigns to AGM&M, Inc. the Grantor's right to appoint Trustees of the Armenian National Institute, Inc.

(D) If at the time this Agreement is executed the promissory note executed by Grantor in favor of the The Cafesjian Family Foundation on March 17, 2000 in the amount of $500,000 (the "Promissory Note") or any promissory note issued to replace the Promissory Note (the "Replacement Promissory Note") is still outstanding, the Promissory Note or the Replacement Promissory Note, whichever is still outstanding, shall be transferred to AGM&M, Inc. as part of the Grant.

1.3    Use of Grant. AGM&M, Inc. shall use the Grant solely to develop, construct and operate the AGM&M.

1.4    Transfer of Grant.

(A) The Grantor shall begin to transfer the assets that compose the Grant upon the execution of this Agreement.

(B) The Grantor shall diligently undertake to complete the transfer of all titles, obtain all consents or other permissions, and otherwise act to effect the completion of the Grant.

SECTION 2    General Conditions and Covenants.

2.1    Use of Grant Funds. AGM&M, Inc. shall use the Grant only for purposes described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code").

2.2    Private Foundation Grants. AGM&M, Inc. may not use any portion of the Grant that has been received from a private foundation, as defined by Section 509(a) of the Code, to pay for an attempt to influence legislation within the meaning of Section 4945(e) of the Code.

2.3    Financial Records. AGM&M, Inc. shall maintain financial records regarding the use of the Grant consistent with generally accepted accounting practices and shall provide the Grantor access to those records upon request.

2.4    Reports and Records.

(A)    Until completion of the AGM&M and operation of the completed facility for 12 months, AGM&M, Inc. shall provide written reports to the Grantor at least quarterly.

(B)    Such reports shall include details on:

    (i)    the amount and nature of the expenditures made from the Grant; and

    (ii)    the progress made in acquiring, designing, renovating, and utilizing the Property and completing the AGM&M.

(C)    In such reports, an officer of AGM&M, Inc. shall certify its compliance with the terms and conditions of this Agreement.

(D)    AGM&M, Inc. shall maintain complete records of receipts and expenditures relating to and the acquisition, design, and renovation of the real property portion of the Grant and the construction of the AGM&M for at least four years after the Grant has been expended, and such records must be made available to the Grantor through its representatives for inspection and copying at all reasonable times.

2.5    Access to Public Spaces. Upon written and reasonable notice, AGM&M, Inc. shall provide Grantor with access to the public spaces within the AGMM free of charge at least six times annually for tours, dinners or other events consistent with the nature of the AGMM in the sole judgment of the AGM&M, Inc., each not lasting longer than six hours, all costs of such events to be borne by Grantor. Grantor shall not have the right to assign, lease or otherwise transfer this right to any other entity or person. This right of access shall expire if Grantor ever ceases to be an organization described in Section 501(c)(3) of the Code.

2.6    Narrative. Grantor and AGM&M, Inc. shall use their best efforts to jointly prepare a narrative on the creation of the AGMM (the "Narrative") for approval by both Grantor and AGM&M, Inc. Upon approval by both Grantor and AGM&M, Inc. and completion of the AGMM, AGM&M, Inc. shall permanently and prominently memorialize the Narrative within the AGMM. AGM&M, Inc. shall include the Narrative or a condensed version thereof in all major publications and public presentations of AGM&M, Inc. that reference the creation of the AGMM.

2.7    No Other Rights or Obligations. Beyond the rights and obligations specifically stated in this Agreement, Grantor disclaims any legal right to control or otherwise influence AGM&M, Inc.'s use of the Grant provided in accordance with this Agreement.

SECTION 3   Conditions Related to AGM&M, Inc.

The Grantor's obligation to make the Grant is subject to the following conditions:

3.1  Tax-Exempt Status.  AGM&M, Inc. must be a tax-exempt organization described in Section 501(c)(3) of the Code, as amended, and may not be a private foundation within the meaning of Section 509(a) of the Code.

3.2  Tax Status Documentation.  AGM&M, Inc. shall deliver to the Grantor a copy of its IRS application for recognition of exemption (when prepared), its IRS determination letter (when received), and such other documentation reasonably requested by the Grantor.

3.3  Evidence of Satisfaction.  AGM&M, Inc. has provided evidence to the Grantor in a form reasonably acceptable to the Grantor that the Assembly is in the process of satisfying the terms and conditions of this Agreement.

3.4  Governance of AGM&M, Inc.

(A)  AGM&M, Inc. must be controlled by a Board of Trustees (the "Board of Trustees") appointed by individuals and organizations that contribute $5,000,000 or more ("Major Donors") to AGM&M, Inc. or any predecessor in interest.

(B)  Each Major Donor is entitled to receive one seat on the Board of Trustees and one vote for each $5,000,000 contributed to AGM&M, Inc. (whether directly or as a result of this Agreement), except that the Grantor shall only accept one seat on the Board of Trustees and one vote regardless of the amount contributed by Grantor to AGM&M, Inc.

(C)  In recognition of her important and significant early contribution to the project, Anoush Mathevosian is included as a Major Donor and voting member of the AGM&M, Inc. Board of Trustees.

(D)  In recognition of its efforts in establishing the AGM&M, the Assembly is included as a Major Donor and a voting member of the AGM&M, Inc. Board of Trustees.

(E)  Decisions of the AGM&M, Inc. Board of Trustees require an 80% vote to carry, unless other wise specified in the Articles or Bylaws of the corporation.

(F)  Each individual Major Donor may appoint both successors to the Board of Trustees and successors to his or her right to appoint successors to the Board of Trustees.  Each subsequent successor Trustee has the rights of a Trustee.

(G)   The initial Board of Trustees of AGM&M, Inc., consists of: Anoush Mathevosian, Hirair S. Hovnanian, Robert A. Kaloosdian, and Gerard L. Cafesjian.

## SECTION 4   Representations by AGM&M, Inc.

AGM&M, Inc. hereby represents and warrants to the Grantor as follows:

4.1   Tax Status. AGM&M, Inc. is an organization described in Section 501(c)(3) of the Code and an organization that is not a private foundation within the meaning of Section 509(a) of the Code, and AGM&M, Inc. shall apply by November 30, 2003 to the Internal Revenue Service for recognition of this status.

4.2   Organization.  AGM&M, Inc. is a nonprofit corporation, duly organized, validly existing and in good standing under the laws of the District of Columbia.

4.3   Power. AGM&M, Inc. has full power to enter into this Agreement, to agree to its obligations hereunder, and to accept the Grant.

4.4   Actions.  All actions required to be taken by AGM&M, Inc. to enter into this Agreement and to perform its obligations hereunder have been duly and properly taken.

4.5   Authorization.  This Agreement has been duly and validly authorized by all necessary action of AGM&M, Inc. and constitutes, when executed, a valid and binding obligation of AGM&M, Inc..

4.6   Furtherance of Charitable Purposes.  The receipt and use of the Grant pursuant to this Agreement is solely in furtherance of AGM&M, Inc.'s stated charitable purposes.

## SECTION 5   General Provisions.

5.1   Notice.

(A)   Any notice, request, report, instruction, or other document to be given under this Agreement by any party to the other parties must be in writing and is deemed effective:

(i)    upon personal delivery, if delivered by hand; or

(ii)   three days after the date of deposit in the U.S. mail, postage prepaid; or

(iii)    on the next business day, if sent by prepaid overnight courier service or facsimile transmission.

(B)    Notice sent in accordance with Section 5.1(A) of this Agreement must be addressed as follows:

(i)    If to AGM&M, Inc.:

c/o The Cafesjian Family Foundation, Inc.
15 South Fifth Street
Suite 900
Minneapolis, MN 55402
Fax: 612-359-8994

(ii)    If to the Grantor:

Armenian Assembly of America, Inc.
122 C Street, NW
Suite 350
Washington, DC 20001
Fax: 202-383-9012

(C)    Any party may change the address to which notices are to be sent by providing notice of such change of address to the other parties in the manner described in this Section 5.1.

5.2    Governing Law. This Agreement must be governed by and construed in accordance with the laws of the District of Columbia (the "District") applicable to contracts to be fully performed within the District, without reference to the District's choice-of-law rules.

5.3    Dispute Resolution. Any disputes arising under this Agreement must be settled exclusively by binding arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force.

5.4    Assignments. This Agreement and the rights and obligations of the parties hereunder are personal to the Grantor and AGM&M, Inc. and are not assignable or transferable to any other person, firm or corporation without the consent of the other party.

5.5    Headings. The subject headings used in this Agreement are included for purposes of reference and convenience only and may not affect the construction or interpretation of any of its provisions.

5.6    Entire Agreement.

(A)    This Agreement represents the entire agreement between the Grantor

and AGM&M, Inc. concerning the Grant and all previous agreements, whether written or oral, are superseded by it.

(B)    This Agreement may be modified or waived only by a written agreement between the Grantor and AGM&M, Inc.

(C)    AGM&M, Inc. acknowledges that it is not relying on any representation of the Grantor, except as set forth in this Agreement, and that no representations the Grantor may have made in the past survive.

*{Signatures on next page.}*

IN WITNESS WHEREOF, the parties hereto have caused this Transfer Agreement to be duly executed as of the day and year first above written.

ARMENIAN ASSEMBLY OF AMERICA, INC.

By: _____     Date: _Nov  1  2003_
    Hirair S. Hovnanian
    Chairman of the Board of Trustees

By: _____     Date: _NOV. 1, 2003_
    Peter Vosbikian
    Chairman of the Board of Directors

ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.

By: _____     Date: _Nov 1, 2003_
    John J. Waters, Jr.
    Secretary and Treasurer

8

TRANSFER AGREEMENT

Schedule A

Transferred Assets

(See attached.)

TRANSFER AGREEMENT

---

<u>Exhibit A</u>

Grant Agreement with [_____]

(See attached.)

CONFIDENTIAL

## TRANSFER AGREEMENT

This Transfer Agreement (this "Agreement") is made as of November 1, 2003, by and between:

Armenian Assembly of America, Inc. (the "Grantor"), a District of Columbia nonprofit corporation; and

Armenian Genocide Museum and Memorial, Inc. ("AGM&M, Inc."), a District of Columbia nonprofit corporation.

## BACKGROUND

In order to complete the building of the Armenian Genocide Museum and Memorial (the "AGM&M"), the Grantor desires to transfer all of its real property, pledges, cash, and other assets acquired for the purpose of building the AGM&M to AGM&M, Inc. under the terms and conditions set out in this Agreement.

The parties, therefore, agree as follows:

## TERMS

SECTION 1   Grant

1.1   <u>Nature of Grant</u>

(A)   The Grantor shall contribute to AGM&M, Inc., all of its rights, title, and interest in and to all cash, pledges, real property, tangible property, intangible property, and other assets contributed to the Grantor and/or held by the Grantor for the development, renovation, and construction of the AGM&M, as detailed on <u>Schedule A</u> (the "Grant").

(B)   Copies of all outstanding grant agreements between the Grantor and its donors relating to the AGM&M are attached to this Agreement as <u>Exhibit A-X</u>.

(C)   The approximate aggregate value of the Grant is $27,784,901. Within this aggregate estimate the value of the real property is $7,250,000.00; the value of the pledges as of October 30, 2003, is $19,422,044; and the value of cash and other assets on hand is approximately $669,528.

1.2   <u>Other Rights and Obligations Transferred</u>.

(A)   AGM&M, Inc. must honor all of the Grantor's donor requirements existing at time of transfer, or in the alternative, obtain donor consent

1

**EXHIBIT E**

to the transfer and any modification of donor terms.

(B)  Without limiting Section 1.2(A) of this Agreement, AGM&M, Inc. assumes and agrees to comply with the Grantor's obligations relating the memorial commemorating the Armenian Genocide under the agreement between Grantor and Gerard L. Cafesjian and The Cafesjian Family Foundation attached to this Agreement as Exhibit A.

(C)  The Grantor hereby assigns to AGM&M, Inc. the Grantor's right to appoint Trustees of the Armenian National Institute, Inc.

(D)  If at the time this Agreement is executed the promissory note executed by Grantor in favor of the The Cafesjian Family Foundation on March 17, 2000 in the amount of $500,000 (the "Promissory Note") or any promissory note issued to replace the Promissory Note (the "Replacement Promissory Note") is still outstanding, the Promissory Note or the Replacement Promissory Note, whichever is still outstanding, shall be transferred to AGM&M, Inc. as part of the Grant.

1.3  Use of Grant. AGM&M, Inc. shall use the Grant solely to develop, construct and operate the AGM&M.

1.4  Transfer of Grant.

(A)  The Grantor shall begin to transfer the assets that compose the Grant upon the execution of this Agreement.

(B)  The Grantor shall diligently undertake to complete the transfer of all titles, obtain all consents or other permissions, and otherwise act to effect the completion of the Grant.

SECTION 2   General Conditions and Covenants.

2.1  Use of Grant Funds. AGM&M, Inc. shall use the Grant only for purposes described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code").

2.2  Private Foundation Grants. AGM&M, Inc. may not use any portion of the Grant that has been received from a private foundation, as defined by Section 509(a) of the Code, to pay for an attempt to influence legislation within the meaning of Section 4945(e) of the Code.

2.3  Financial Records. AGM&M, Inc. shall maintain financial records regarding the use of the Grant consistent with generally accepted accounting practices and shall provide the Grantor access to those records upon request.

2.4  Reports and Records.



(A)   Until completion of the AGM&M and operation of the completed facility for 12 months, AGM&M, Inc. shall provide written reports to the Grantor at least quarterly.

(B)   Such reports shall include details on:

     (i)   the amount and nature of the expenditures made from the Grant; and

     (ii)   the progress made in acquiring, designing, renovating, and utilizing the Property and completing the AGM&M.

(C)   In such reports, an officer of AGM&M, Inc. shall certify its compliance with the terms and conditions of this Agreement.

(D)   AGM&M, Inc. shall maintain complete records of receipts and expenditures relating to and the acquisition, design, and renovation of the real property portion of the Grant and the construction of the AGM&M for at least four years after the Grant has been expended, and such records must be made available to the Grantor through its representatives for inspection and copying at all reasonable times.

2.5    <u>Access to Public Spaces</u>. Upon written and reasonable notice, AGM&M, Inc. shall provide Grantor with access to the public spaces within the AGMM free of charge at least six times annually for tours, dinners or other events consistent with the nature of the AGMM in the sole judgment of the AGM&M, Inc., each not lasting longer than six hours, all costs of such events to be borne by Grantor. Grantor shall not have the right to assign, lease or otherwise transfer this right to any other entity or person. This right of access shall expire if Grantor ever ceases to be an organization described in Section 501(c)(3) of the Code.

2.6    <u>Narrative</u>. Grantor and AGM&M, Inc. shall use their best efforts to jointly prepare a narrative on the creation of the AGMM (the "Narrative") for approval by both Grantor and AGM&M, Inc. Upon approval by both Grantor and AGM&M, Inc. and completion of the AGMM, AGM&M, Inc. shall permanently and prominently memorialize the Narrative within the AGMM. AGM&M, Inc. shall include the Narrative or a condensed version thereof in all major publications and public presentations of AGM&M, Inc. that reference the creation of the AGMM.

2.7    <u>No Other Rights or Obligations</u>. Beyond the rights and obligations specifically stated in this Agreement, Grantor disclaims any legal right to control or otherwise influence AGM&M, Inc.'s use of the Grant provided in accordance with this Agreement.

SECTION 3   Conditions Related to AGM&M, Inc.

The Grantor's obligation to make the Grant is subject to the following conditions:

3.1   Tax-Exempt Status.  AGM&M, Inc. must be a tax-exempt organization described in Section 501(c)(3) of the Code, as amended, and may not be a private foundation within the meaning of Section 509(a) of the Code.

3.2   Tax Status Documentation.  AGM&M, Inc. shall deliver to the Grantor a copy of its IRS application for recognition of exemption (when prepared), its IRS determination letter (when received), and such other documentation reasonably requested by the Grantor.

3.3   Evidence of Satisfaction.  AGM&M, Inc. has provided evidence to the Grantor in a form reasonably acceptable to the Grantor that the Assembly is in the process of satisfying the terms and conditions of this Agreement.

3.4   Governance of AGM&M, Inc.

(A)   AGM&M, Inc. must be controlled by a Board of Trustees (the "Board of Trustees") appointed by individuals and organizations that contribute $5,000,000 or more ("Major Donors") to AGM&M, Inc. or any predecessor in interest.

(B)   Each Major Donor is entitled to receive one seat on the Board of Trustees and one vote for each $5,000,000 contributed to AGM&M, Inc. (whether directly or as a result of this Agreement), except that the Grantor shall only accept one seat on the Board of Trustees and one vote regardless of the amount contributed by Grantor to AGM&M, Inc.

(C)   In recognition of her important and significant early contribution to the project, Anoush Mathevosian is included as a Major Donor and voting member of the AGM&M, Inc. Board of Trustees.

(D)   In recognition of its efforts in establishing the AGM&M, the Assembly is included as a Major Donor and a voting member of the AGM&M, Inc. Board of Trustees.

(E)   Decisions of the AGM&M, Inc. Board of Trustees require an 80% vote to carry, unless otherwise specified in the Articles or Bylaws of the corporation.

(F)   Each individual Major Donor may appoint both successors to the Board of Trustees and successors to his or her right to appoint successors to the Board of Trustees. Each subsequent successor Trustee has the rights of a Trustee.



(G) The initial Board of Trustees of AGM&M, Inc., consists of: Anoush Mathevosian, Hirair S. Hovnanian, Robert A. Kaloosdian, and Gerard L. Cafesjian.

## SECTION 4  Representations by AGM&M, Inc.

AGM&M, Inc. hereby represents and warrants to the Grantor as follows:

4.1  Tax Status. AGM&M, Inc. is an organization described in Section 501(c)(3) of the Code and an organization that is not a private foundation within the meaning of Section 509(a) of the Code, and AGM&M, Inc. shall apply by November 30, 2003 to the Internal Revenue Service for recognition of this status.

4.2  Organization. AGM&M, Inc. is a nonprofit corporation, duly organized, validly existing and in good standing under the laws of the District of Columbia.

4.3  Power. AGM&M, Inc. has full power to enter into this Agreement, to agree to its obligations hereunder, and to accept the Grant.

4.4  Actions. All actions required to be taken by AGM&M, Inc. to enter into this Agreement and to perform its obligations hereunder have been duly and properly taken.

4.5  Authorization. This Agreement has been duly and validly authorized by all necessary action of AGM&M, Inc. and constitutes, when executed, a valid and binding obligation of AGM&M, Inc..

4.6  Furtherance of Charitable Purposes. The receipt and use of the Grant pursuant to this Agreement is solely in furtherance of AGM&M, Inc.'s stated charitable purposes.

## SECTION 5  General Provisions.

5.1  Notice.

(A) Any notice, request, report, instruction, or other document to be given under this Agreement by any party to the other parties must be in writing and is deemed effective:

(i)   upon personal delivery, if delivered by hand; or

(ii)  three days after the date of deposit in the U.S. mail, postage prepaid; or

(iii)    on the next business day, if sent by prepaid overnight courier service or facsimile transmission.

(B)    Notice sent in accordance with Section 5.1(A) of this Agreement must be addressed as follows:

(i)    If to AGM&M, Inc.:

c/o The Cafesjian Family Foundation, Inc.
15 South Fifth Street
Suite 900
Minneapolis, MN 55402
Fax: 612-359-8994

(ii)    If to the Grantor:

Armenian Assembly of America, Inc.
122 C Street, NW
Suite 350
Washington, DC 20001
Fax: 202-383-9012

(C)    Any party may change the address to which notices are to be sent by providing notice of such change of address to the other parties in the manner described in this Section 5.1.

5.2    **Governing Law.** This Agreement must be governed by and construed in accordance with the laws of the District of Columbia (the "District") applicable to contracts to be fully performed within the District, without reference to the District's choice-of-law rules.

5.3    **Dispute Resolution.** Any disputes arising under this Agreement must be settled exclusively by binding arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force.

5.4    **Assignments.** This Agreement and the rights and obligations of the parties hereunder are personal to the Grantor and AGM&M, Inc. and are not assignable or transferable to any other person, firm or corporation without the consent of the other party.

5.5    **Headings.** The subject headings used in this Agreement are included for purposes of reference and convenience only and may not affect the construction or interpretation of any of its provisions.

5.6    **Entire Agreement.**

(A)    This Agreement represents the entire agreement between the Grantor

and AGM&M, Inc. concerning the Grant and all previous agreements, whether written or oral, are superseded by it.

(B)   This Agreement may be modified or waived only by a written agreement between the Grantor and AGM&M, Inc.

(C)   AGM&M, Inc. acknowledges that it is not relying on any representation of the Grantor, except as set forth in this Agreement, and that no representations the Grantor may have made in the past survive.

*[Signatures on next page.]*

IN WITNESS WHEREOF, the parties hereto have caused this Transfer
Agreement to be duly executed as of the day and year first above written.

ARMENIAN ASSEMBLY OF AMERICA, INC.

By: _____                Date: _Nov  1  2003_
    Hirair S. Hovnanian
    Chairman of the Board of Trustees

By: _____                Date: _NOV. 1, 2003_
    Peter Vosbikian
    Chairman of the Board of Directors

ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.

By: _____                Date: _Nov 1, 2003_
    John J. Waters, Jr.
    Secretary and Treasurer

8

TRANSFER AGREEMENT

## Schedule A

### Transferred Assets

(See attached.)

TRANSFER AGREEMENT

---

Exhibit A

Grant Agreement with [_____]

(See attached.)

CONFIDENTIAL

## TRANSFER AGREEMENT

This Transfer Agreement (this "Agreement") is made as of November 1, 2003, by and between:

Armenian Assembly of America, Inc. (the "Grantor"), a District of Columbia nonprofit corporation; and

Armenian Genocide Museum and Memorial, Inc. ("AGM&M, Inc."), a District of Columbia nonprofit corporation.

## BACKGROUND

In order to complete the building of the Armenian Genocide Museum and Memorial (the "AGM&M"), the Grantor desires to transfer all of its real property, pledges, cash, and other assets acquired for the purpose of building the AGM&M to AGM&M, Inc. under the terms and conditions set out in this Agreement.

The parties, therefore, agree as follows:

## TERMS

### SECTION 1  Grant

1.1     Nature of Grant.

    (A)     The Grantor shall contribute to AGM&M, Inc., all of its rights, title, and interest in and to all cash, pledges, real property, tangible property, intangible property, and other assets contributed to the Grantor and/or held by the Grantor for the development, renovation, and construction of the AGM&M, as detailed on Schedule A (the "Grant").

    (B)     Copies of all outstanding grant agreements between the Grantor and its donors relating to the AGM&M are attached to this Agreement as Exhibit A-X.

    (C)     The approximate aggregate value of the Grant is $27,784,901. Within this aggregate estimate the value of the real property is $7,250,000.00; the value of the pledges as of October 30, 2003, is $19,422,044; and the value of cash and other assets on hand is approximately $669,528.

1.2     Other Rights and Obligations Transferred.

    (A)     AGM&M, Inc. must honor all of the Grantor's donor requirements existing at time of transfer, or in the alternative, obtain donor consent

EXHIBIT E

to the transfer and any modification of donor terms.

(B)     Without limiting Section 1.2(A) of this Agreement, AGM&M, Inc. assumes and agrees to comply with the Grantor's obligations relating the memorial commemorating the Armenian Genocide under the agreement between Grantor and Gerard L. Cafesjian and The Cafesjian Family Foundation attached to this Agreement as Exhibit A.

(C)     The Grantor hereby assigns to AGM&M, Inc. the Grantor's right to appoint Trustees of the Armenian National Institute, Inc.

(D)     If at the time this Agreement is executed the promissory note executed by Grantor in favor of the The Cafesjian Family Foundation on March 17, 2000 in the amount of $500,000 (the "Promissory Note") or any promissory note issued to replace the Promissory Note (the "Replacement Promissory Note") is still outstanding, the Promissory Note or the Replacement Promissory Note, whichever is still outstanding, shall be transferred to AGM&M, Inc. as part of the Grant.

1.3     Use of Grant. AGM&M, Inc. shall use the Grant solely to develop, construct and operate the AGM&M.

1.4     Transfer of Grant.

(A)     The Grantor shall begin to transfer the assets that compose the Grant upon the execution of this Agreement.

(B)     The Grantor shall diligently undertake to complete the transfer of all titles, obtain all consents or other permissions, and otherwise act to effect the completion of the Grant.

SECTION 2   General Conditions and Covenants.

2.1     Use of Grant Funds. AGM&M, Inc. shall use the Grant only for purposes described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code").

2.2     Private Foundation Grants. AGM&M, Inc. may not use any portion of the Grant that has been received from a private foundation, as defined by Section 509(a) of the Code, to pay for an attempt to influence legislation within the meaning of Section 4945(e) of the Code.

2.3     Financial Records. AGM&M, Inc. shall maintain financial records regarding the use of the Grant consistent with generally accepted accounting practices and shall provide the Grantor access to those records upon request.

2.4     Reports and Records.



(A)    Until completion of the AGM&M and operation of the completed facility for 12 months, AGM&M, Inc. shall provide written reports to the Grantor at least quarterly.

(B)    Such reports shall include details on:

(i)    the amount and nature of the expenditures made from the Grant; and

(ii)    the progress made in acquiring, designing, renovating, and utilizing the Property and completing the AGM&M.

(C)    In such reports, an officer of AGM&M, Inc. shall certify its compliance with the terms and conditions of this Agreement.

(D)    AGM&M, Inc. shall maintain complete records of receipts and expenditures relating to and the acquisition, design, and renovation of the real property portion of the Grant and the construction of the AGM&M for at least four years after the Grant has been expended, and such records must be made available to the Grantor through its representatives for inspection and copying at all reasonable times.

2.5    <u>Access to Public Spaces.</u> Upon written and reasonable notice, AGM&M, Inc. shall provide Grantor with access to the public spaces within the AGMM free of charge at least six times annually for tours, dinners or other events consistent with the nature of the AGMM in the sole judgment of the AGM&M, Inc., each not lasting longer than six hours, all costs of such events to be borne by Grantor. Grantor shall not have the right to assign, lease or otherwise transfer this right to any other entity or person. This right of access shall expire if Grantor ever ceases to be an organization described in Section 501(c)(3) of the Code.

2.6    <u>Narrative.</u> Grantor and AGM&M, Inc. shall use their best efforts to jointly prepare a narrative on the creation of the AGMM (the "Narrative") for approval by both Grantor and AGM&M, Inc. Upon approval by both Grantor and AGM&M, Inc. and completion of the AGMM, AGM&M, Inc. shall permanently and prominently memorialize the Narrative within the AGMM. AGM&M, Inc. shall include the Narrative or a condensed version thereof in all major publications and public presentations of AGM&M, Inc. that reference the creation of the AGMM.

2.7    <u>No Other Rights or Obligations.</u> Beyond the rights and obligations specifically stated in this Agreement, Grantor disclaims any legal right to control or otherwise influence AGM&M, Inc.'s use of the Grant provided in accordance with this Agreement.

**SECTION 3   Conditions Related to AGM&M, Inc.**

The Grantor's obligation to make the Grant is subject to the following conditions:

3.1   Tax-Exempt Status.   AGM&M, Inc. must be a tax-exempt organization described in Section 501(c)(3) of the Code, as amended, and may not be a private foundation within the meaning of Section 509(a) of the Code.

3.2   Tax Status Documentation.   AGM&M, Inc. shall deliver to the Grantor a copy of its IRS application for recognition of exemption (when prepared), its IRS determination letter (when received), and such other documentation reasonably requested by the Grantor.

3.3   Evidence of Satisfaction.   AGM&M, Inc. has provided evidence to the Grantor in a form reasonably acceptable to the Grantor that the Assembly is in the process of satisfying the terms and conditions of this Agreement.

3.4   Governance of AGM&M, Inc.

(A)   AGM&M, Inc. must be controlled by a Board of Trustees (the "Board of Trustees") appointed by individuals and organizations that contribute $5,000,000 or more ("Major Donors") to AGM&M, Inc. or any predecessor in interest.

(B)   Each Major Donor is entitled to receive one seat on the Board of Trustees and one vote for each $5,000,000 contributed to AGM&M, Inc. (whether directly or as a result of this Agreement), except that the Grantor shall only accept one seat on the Board of Trustees and one vote regardless of the amount contributed by Grantor to AGM&M, Inc.

(C)   In recognition of her important and significant early contribution to the project, Anoush Mathevosian is included as a Major Donor and voting member of the AGM&M, Inc. Board of Trustees.

(D)   In recognition of its efforts in establishing the AGM&M, the Assembly is included as a Major Donor and a voting member of the AGM&M, Inc. Board of Trustees.

(E)   Decisions of the AGM&M, Inc. Board of Trustees require an 80% vote to carry, unless other wise specified in the Articles or Bylaws of the corporation.

(F)   Each individual Major Donor may appoint both successors to the Board of Trustees and successors to his or her right to appoint successors to the Board of Trustees. Each subsequent successor Trustee has the rights of a Trustee.

(G) The initial Board of Trustees of AGM&M, Inc., consists of: Anoush Mathevosian, Hirair S. Hovnanian, Robert A. Kaloosdian, and Gerard L. Cafesjian.

## SECTION 4  Representations by AGM&M, Inc.

AGM&M, Inc. hereby represents and warrants to the Grantor as follows:

4.1 Tax Status. AGM&M, Inc. is an organization described in Section 501(c)(3) of the Code and an organization that is not a private foundation within the meaning of Section 509(a) of the Code, and AGM&M, Inc. shall apply by November 30, 2003 to the Internal Revenue Service for recognition of this status.

4.2 Organization. AGM&M, Inc. is a nonprofit corporation, duly organized, validly existing and in good standing under the laws of the District of Columbia.

4.3 Power. AGM&M, Inc. has full power to enter into this Agreement, to agree to its obligations hereunder, and to accept the Grant.

4.4 Actions. All actions required to be taken by AGM&M, Inc. to enter into this Agreement and to perform its obligations hereunder have been duly and properly taken.

4.5 Authorization. This Agreement has been duly and validly authorized by all necessary action of AGM&M, Inc. and constitutes, when executed, a valid and binding obligation of AGM&M, Inc..

4.6 Furtherance of Charitable Purposes. The receipt and use of the Grant pursuant to this Agreement is solely in furtherance of AGM&M, Inc.'s stated charitable purposes.

## SECTION 5  General Provisions.

5.1 Notice.

(A) Any notice, request, report, instruction, or other document to be given under this Agreement by any party to the other parties must be in writing and is deemed effective:

(i) upon personal delivery, if delivered by hand; or

(ii) three days after the date of deposit in the U.S. mail, postage prepaid; or

(iii) on the next business day, if sent by prepaid overnight courier service or facsimile transmission.

(B) Notice sent in accordance with Section 5.1(A) of this Agreement must be addressed as follows:

(i) If to AGM&M, Inc.:

c/o The Cafesjian Family Foundation, Inc.
15 South Fifth Street
Suite 900
Minneapolis, MN 55402
Fax: 612-359-8994

(ii) If to the Grantor:

Armenian Assembly of America, Inc.
122 C Street, NW
Suite 350
Washington, DC 20001
Fax: 202-383-9012

(C) Any party may change the address to which notices are to be sent by providing notice of such change of address to the other parties in the manner described in this Section 5.1.

5.2 <u>Governing Law.</u> This Agreement must be governed by and construed in accordance with the laws of the District of Columbia (the "District") applicable to contracts to be fully performed within the District, without reference to the District's choice-of-law rules.

5.3 <u>Dispute Resolution.</u> Any disputes arising under this Agreement must be settled exclusively by binding arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in force.

5.4 <u>Assignments.</u> This Agreement and the rights and obligations of the parties hereunder are personal to the Grantor and AGM&M, Inc. and are not assignable or transferable to any other person, firm or corporation without the consent of the other party.

5.5 <u>Headings.</u> The subject headings used in this Agreement are included for purposes of reference and convenience only and may not affect the construction or interpretation of any of its provisions.

5.6 <u>Entire Agreement.</u>

(A) This Agreement represents the entire agreement between the Grantor

and AGM&M, Inc. concerning the Grant and all previous agreements, whether written or oral, are superseded by it.

(B)  This Agreement may be modified or waived only by a written agreement between the Grantor and AGM&M, Inc.

(C)  AGM&M, Inc. acknowledges that it is not relying on any representation of the Grantor, except as set forth in this Agreement, and that no representations the Grantor may have made in the past survive.

*[Signatures on next page.]*

IN WITNESS WHEREOF, the parties hereto have caused this Transfer Agreement to be duly executed as of the day and year first above written.

ARMENIAN ASSEMBLY OF AMERICA, INC.

By: _____                    Date: _Nov 1 2003_
    Chairman of the Board of Trustees

By: _____                    Date: _NOV. 1, 2003_
    Peter Vosbikian
    Chairman of the Board of Directors

ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.

By: _____                    Date: _Nov 1, 2003_
    John J. Waters, Jr.
    Secretary and Treasurer

8

TRANSFER AGREEMENT

Schedule A

Transferred Assets

(See attached.)

TRANSFER AGREEMENT

## Exhibit A

Grant Agreement with [_____]

(See attached.)

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

The CAfesjian Family Foundation, Inc., individually and on behalf of the Armenian Genocide Museum and Memorial, Inc.

## DEFENDANTS

Armenian Genocide Museum and Memorial, Inc., Hirair Hovnanian, Anoush Mathevosian, Van Krikorian, Armenian Assembly of America, Inc.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Collier County, Fla
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Washington, D.C.
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Peter C. Lallas
Hogan & Hartson LLP
555 13th St., NW
Washington, DC 20004

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

◉ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E.** *General Civil (Other)*        **OR**        ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities- Employment ☐ 446 Americans w/Disabilities- Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ TBD    Check YES only if demanded in complaint
JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE September 28, 2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.