UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The Cafesjian Family Foundation, Inc., Individually and on behalf of the Armenian Genocide Museum and Memorial, Inc.<br>　　　　　　　Plaintiff,<br><br>v.<br><br>The Armenian Genocide Museum and Memorial, Inc., Hirair Hovnanian, Anoush Mathevosian, Van Krikorian, and the Armenian Assembly of America, Inc.<br>　　　　　　　Defendants. | Civil File No. 1:07-cv-01746 (RWR) |

## DEFENDANTS THE ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC., HIRAIR HOVNANIAN, ANOUSH MATHEVOSIAN, VAN KRIKORIAN, AND THE ARMENIAN ASSEMBLY OF AMERICA, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF CAFESJIAN FAMILY FOUNDATION'S COMPLAINT

Defendants the Armenian Genocide Museum and Memorial, Inc. ("AGM&M"), Hirair Hovnanian ("Hovnanian"), Anoush Mathevosian ("Mathevosian"), Van Krikorian ("Krikorian"), and the Armenian Assembly of America, Inc. ("the Assembly") (hereinafter collectively referred to as "Defendants"), hereby submit their Answer and Affirmative Defenses to Plaintiff, the Cafesjian Family Foundation, Inc. ("CFF")'s Complaint ("the Complaint"), filed individually and purportedly on behalf of AGM&M. The answers set forth below correspond to the numbered paragraphs in the Complaint.

### ANSWER TO INTRODUCTION:

The Introduction to the Complaint asserts that the CFF has filed the instant action both individually and on behalf of AGM&M. Defendants dispute that CFF is authorized or legally entitled to file this action on behalf of AGM&M.

1

## PARTIES

1. Defendants admit the allegations set forth in paragraph 1 of the Complaint.

2. Defendants admit the allegations set forth in paragraph 2 of the Complaint.

3. Defendants admit the allegations set forth in paragraph 3 of the Complaint.

4. Defendants admit the allegations set forth in paragraph 4 of the Complaint.

5. Defendants admit the allegations set forth in paragraph 5 of the Complaint.

6. Defendants admit the allegations set forth in paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

7. Paragraph 7 of the Complaint sets forth a legal conclusion or argument, to which no response is required.

8. Paragraph 8 of the Complaint sets forth a legal conclusion or argument, to which no response is required.

## FACTUAL BACKGROUND

9. Defendants state that the Articles of Incorporation of AGM&M in their entirety speak for themselves.

10. Defendants state that the Articles of Incorporation and By-Laws of AGM&M in their entirety speak for themselves.

11. Defendants state that the Articles of Incorporation and By-Laws of AGM&M in their entirety speak for themselves.

12. Defendants are without sufficient information or knowledge to admit or deny whether a total of six Trustee votes are outstanding and call upon Plaintiff to prove same. With regard to the remaining allegations set forth in paragraph 12 of the Complaint, Defendants state that the Articles of Incorporation of AGM&M and the November 1, 2003 Grant Agreement by

2

and between CFF, Gerard L. Cafesjian ("Cafesjian") and the Assembly ("Grant Agreement"), speak for themselves. Defendants further state that, pursuant to the organizational documents, the initial board of Trustees of AGM&M consisted of four Trustees, each with one vote.

13.     Defendants are without sufficient information or knowledge to admit or deny whether CFF is legally or otherwise entitled to "control three of the six [AGM&M] Trustee votes," or whether CFF has "pledged in excess of $17.5 million and has contributed in excess of $14.5 million and loaned $500,000 for the benefit of AGM&M." Defendants call upon Plaintiff to prove same. With regard to the remaining allegations set forth in paragraph 13 of the Complaint, Defendants state that the Articles of Incorporation of AGM&M, By-Laws of AGM&M, and the Grant Agreement, speak for themselves. Defendants further state that, pursuant to Article II, Sections 2.4 and 2.5 of the By-Laws, AGM&M Trustees are selected based on their "contributions" to the AGM&M, not "pledge[s]" as the Complaint states. Accordingly, Defendants deny the allegations set forth in paragraph 13 of the Complaint in the form stated.

14.     Defendants admit that Hovnanian is a Trustee of AGM&M and controls one vote as established in the organizational documents. Defendants state that as of September 2006, Hovnanian has contributed in excess of $1.5 million to cover unpaid taxes, salaries, mortgage payments, as well as to advance the purposes of the AGM&M. With regard to the remaining allegations set forth in paragraph 14 of the Complaint, Defendants state that in the Articles of Incorporation of AGM&M, By-Laws of AGM&M, and the Grant Agreement, speak for themselves.

15.     Defendants state that the Articles of Incorporation of AGM&M, By-Laws of AGM&M, and the Grant Agreement, speak for themselves. Defendants admit the remaining

allegations set forth in paragraph 15 of the Complaint.

16. Defendants state that the Articles of Incorporation of AGM&M, By-Laws of AGM&M, and the Grant Agreement, speak for themselves. Defendants admit the remaining allegations set forth in paragraph 16 of the Complaint.

17. Defendants state that in their entirety, the By-Laws of AGM&M speak for themselves.

18. Defendants state that in their entirety, the By-Laws of AGM&M speak for themselves.

19. Defendants admit the allegations set forth in paragraph 19 of the Complaint to the extent such allegations state that on or around August 31, 2007, the AGM&M issued a press release, attached hereto at <u>Exhibit A</u>. The AGM&M press release speaks for itself.

20. Defendants admit the allegations set forth in paragraph 20 of the Complaint to the extent such allegations state that on or around August 31, 2007, the AGM&M announced that its Building and Operations Committee had signed contracts with Washington area planning and design firms specializing in museum planning and construction to begin the development and construction of a functioning Armenian genocide museum in the historic National Bank of Washington building and adjacent properties. Defendants further state that the Building and Operations Committee was duly authorized to sign such contracts. Defendants deny the remaining allegations set forth in paragraph 20 in the form stated.

21. Defendants state that the letter and agenda attached at <u>Exhibit D</u> to the Complaint, in their entirety, speak for themselves. To the extent a further response is required, Defendants admit the allegations set forth in paragraph 21 of the Complaint.

22. Defendants admit that a duly noticed meeting of the AGM&M Trustees was held

on May 7, 2007, and that Hovnanian, Mathevosian, Krikorian (on behalf of the Assembly), each of whom controls one vote, and John J. Waters ("Waters"), the CFF designated Trustee, attended the meeting. Defendants admit that Waters attended by telephone. Defendants are without sufficient information to admit or deny the allegation set forth in paragraph 22 of the Complaint that the CFF designated Trustee "controls three Trustee votes."

23. Defendants deny the allegations set forth in paragraph 23 of the Complaint in the form stated. Defendants further state that, at the meeting on May 7, 2007, a discussion occurred regarding whether or not Cafesjian's and CFF's actions in filing an action against the Assembly in the U.S. District Court in Minnesota, and Waters' actions in filing a Memorandum of Agreement Reserving Rights, purportedly on behalf of AGM&M and CFF, in the official records of the Recorder of Deeds for the District of Columbia, which effectively clouded the title of multiple AGM&M owned properties, created a conflict of interest and breach of fiduciary duty which prohibited Waters and/or CFF from either participating in the discussions on proposals for going forward with action to bring the building to fruition and/or from exercising CFF's votes on these matters. The meeting was recorded with the assent of Waters and the other Trustees.

24. Defendants deny the allegations set forth in paragraph 24 of the Complaint in the form stated. Defendants state that after the discussion of conflict of interest described in paragraph #23 above, Waters moved to adjourn the meeting, but that there was no second to his motion. Defendants further state that Krikorian then moved that Waters be prohibited from voting on any motions with regard to the building, operation, and management of the museum because of the conflict of interest described in paragraph #23 above, but before there was a second to that motion, Waters left the meeting, stating that "I am going to be leaving the meeting under protest. Anything that you do from this point forward, you can consider it to be a quorum

if you like because it says that it is, anything you vote on, you can do whatever you want, but anyway my participation in this meeting is over." After Waters voluntarily left the meeting, the remaining Trustees, following the procedures set out in the by-laws of the AGM&M, voted in favor of several motions, including one which authorized the building and operations committee to go forward with building of the museum and another authorizing the seeking of tax-exempt status and demolition of the buildings.

    25.      Paragraph 25 of the Complaint sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in paragraph 25 of the Complaint.

    26.      Defendants deny the allegations set forth in paragraph 26 of the Complaint to the extent such allegations assert that Defendants have wrongfully or otherwise unlawfully withheld corporate records that were duly requested by a person authorized to request and receive such records. Defendants provided Waters with the minutes, transcript, and recording of the portion of the May 7, 2007 meeting in which he participated.

    27.      Defendants admit the allegations set forth in paragraph 27 of the Complaint to the extent that the allegations state that on May 7, 2007, a quorum of the eligible Trustees of AGM&M, pursuant to Section 2.10 of the AGM&M By-Laws, duly organized and appointed a Building and Operations Committee. Defendants further state that, to the extent paragraph 27 sets forth a legal argument or conclusion, no response is required. To the extent a further response is required, Defendants deny the remaining allegations set forth in paragraph 27 of the Complaint.

## AGM&M AND THE GRANT AND TRANSFER AGREEMENTS

    28.      Defendants admit that between 2000 and 2003, the Assembly sought and received

6

major donations and pledges from various sources, including CFF, to fund the development and creation of a museum to commemorate the Armenian Genocide. Defendants further admit that in 2003, the AGM&M was incorporated as a District of Columbia non-profit corporation and that the Assembly, at the insistence of Cafesjian, transferred to the AGM&M all of the assets it had received to develop and fund the museum. Defendants deny the remaining allegations set forth in paragraph 28 of the Complaint in the form stated.

29. Defendants state that the Articles of Incorporation of AGM&M speak for themselves.

30. Defendants deny the allegations set forth in paragraph 30 of the Complaint in the form stated, and state that on February 14, 2000, the Assembly purchased the National Bank site for seven million two hundred fifty thousand dollars ($7,250,000) and that Cafesjian through CFF contributed less than half of the amount ($3,500,000) for the purchase of the site. Cafesjian then acquired the adjacent properties for his own Cafesjian museum, which would substantially exceed the AGM&M in size. Defendants further state that Cafesjian eventually insisted that not the Assembly, but a new non-profit organization over which he would have effective control, the AGM&M, be created to handle the construction, development, and operation of the museum and memorial. Defendants further state that on November 1, 2003, the Assembly executed a Grant Agreement with Cafesjian and CFF, which was drafted by Cafesjian's attorneys. Defendants further state that the Grant Agreement, in its entirety, speaks for itself.

31. Defendants state that the Grant Agreement, in its entirety, speaks for itself.

32. To the extent the allegations set forth in paragraph 31 of the Complaint describe the Transfer Agreement executed by and between the Assembly and AGM&M on November 1, 2003 ("the Transfer Agreement") and its terms, Defendants state that the Transfer Agreement

speaks for itself. Defendants deny the remaining allegations set forth in paragraph 32 of the Complaint.

33. Defendants admit that CFF's obligations and rights with respect to its grants and transfers to the Assembly rely upon and incorporate the terms of the Transfer Agreement. With respect to the remaining allegations pertaining to the terms of the Transfer Agreement, the Defendants state that the Transfer Agreement speaks for itself.

34. Defendants admit that the By-Laws in their entirety speak for themselves and provide for "an 80 percent affirmative vote of the trustees present at a meeting where a quorum is present." Defendants further state that the Transfer Agreement, in its entirety, speaks for itself.

## COUNT I – ULTRA VIRES ACT

35. To the extent paragraph 35 of the Complaint sets forth a legal conclusion, no response is required. Defendants admit that the Trustees of AGM&M also serve as Directors of AGM&M. Defendants deny the remaining allegations set forth in paragraph 35 of the Complaint.

36. To the extent paragraph 36 of the Complaint sets forth a legal conclusion or argument, no response is required. To the extent a response is required, Defendants deny the allegations set forth in paragraph 36 of the Complaint in the form stated and state that, under the AGM&M By-Laws, the delegation of authority to a committee requires "an 80 percent affirmative vote of the trustees present at a meeting where a quorum is present" and that a quorum shall exist where "persons representing one-half of the aggregate eligible votes" are present.

37. To the extent paragraph 37 of the Complaint sets forth a legal conclusion or

argument, no response is required. To the extent a response is required, Defendants deny the allegations set forth in paragraph 37 of the Complaint in the form stated and state that, under the AGM&M By-Laws, any action of the Trustees requires "an 80 percent affirmative vote of the trustees present at a meeting where a quorum is present" and that a quorum shall exist where "persons representing one-half of the aggregate <u>eligible</u> votes" are present. In addition, the removal of a Trustee "without cause" may occur if there is a "unanimous affirmative vote of the Trustees present at a meeting where a quorum is present, not counting the vote or votes of the Trustee whose removal is the matter to be voted upon with respect either to the existence of a quorum of to the unanimity of the vote." By-Laws at Section 2.17.

38. Defendants admit that on May 7, 2007, a quorum of Trustees was present at the AGM&M Trustee meeting and that Hovnanian, Mathevosian, and Krikorian, as the authorized voters present at the meeting, created and delegated authority to a planning, development and building committee. Defendants further admit that Waters, the CFF Trustee, attended the meeting, but state that he left the meeting voluntarily stating that "I am going to be leaving the meeting under protest. Anything that you do from this point forward, you can consider it to be a quorum if you like because it says that it is, anything you vote on, you can do whatever you want, but anyway my participation in this meeting is over." Waters' "protest" referred to being asked questions related to his breaches of fiduciary duties to AGM&M. To the extent a further response is required, Defendants repeat and reallege the answers to paragraphs 23 and 24 as if fully stated herein. Defendants deny the remaining allegations set forth at paragraph 38 of the Complaint in the form stated.

39. Paragraph 39 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at

9

paragraph 39 of the Complaint.

40.     Paragraph 40 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 40 of the Complaint.

41.     Paragraph 41 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 41 of the Complaint and deny that CFF is entitled to the relief requested.

## COUNT II – DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY

42.     Paragraph 42 sets forth a legal conclusion or argument to which no response is required.

43.     Paragraph 43 sets forth a legal conclusion or argument to which no response is required.

44.     Paragraph 44 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 44 of the Complaint.

45.     Paragraph 45 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 45 of the Complaint.

46.     Paragraph 46 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 46 of the Complaint.

47.     Paragraph 47 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at

paragraph 47 of the Complaint.

## COUNT III – DERIVATIVE CLAIM FOR WASTE OF CORPORATE ASSETS

48. Paragraph 48 sets forth a legal conclusion or argument to which no response is required.

49. Paragraph 49 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants admit the allegations set forth at paragraph 49 of the Complaint.

50. Paragraph 50 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 50 of the Complaint.

51. Paragraph 51 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 51 of the Complaint.

52. Paragraph 52 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 52 of the Complaint.

53. Paragraph 53 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 53 of the Complaint.

## COUNT IV – DERIVATIVE CLAIM FOR ABUSE OF CONTROL

54. Paragraph 54 sets forth a legal conclusion or argument to which no response is required.

55. Paragraph 55 sets forth a legal conclusion or argument to which no response is

required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 55 of the Complaint.

56. Paragraph 56 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 56 of the Complaint.

57. Paragraph 57 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 57 of the Complaint.

58. Paragraph 58 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 58 of the Complaint.

## COUNT V – DERIVATIVE CLAIM FOR FRUSTRATION OF PURPOSE

59. Paragraph 59 sets forth a legal conclusion or argument to which no response is required.

60. Defendants state that the Articles of Incorporation of AGM&M speak for themselves. To the extent a response is required, Defendants admit the allegations set forth at paragraph 60 of the Complaint.

61. Defendants admit that CFF made grants and pledges to the Assembly and/or AGM&M for the purpose of creating a museum and memorial dedicated to the memory of the Armenian Genocide. Defendants are without sufficient information or knowledge to admit or deny what the purpose of CFF was when it made the various grants and pledges. Defendants further state that the terms of such grants and conditions were set forth in various agreements between the parties, including without limitation, the Grant Agreement and the Transfer

Agreement, and that those agreements, in their entirety, speak for themselves.

62. Defendants deny the allegations set forth in paragraph 62 of the Complaint in the form stated and further state that the Grant Agreement speaks for itself. Defendants further state that the applicability of the provisions in the Grant Agreement are limited to those properties where were actually transferred by CFF to the Assembly. Defendants further state that none of the abutting properties transferred to the AGM&M were transferred to the Assembly, as required by the Grant Agreement, but instead were transferred directly from their owner, The TomKat Limited Partnership, to the AGMM in breach of the Grant Agreement.

63. Paragraph 63 of the Complaint sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 63 of the Complaint in the form stated.

64. Paragraph 64 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 64 of the Complaint.

65. Paragraph 65 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 65 of the Complaint.

66. Paragraph 66 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 66 of the Complaint.

67. Paragraph 67 sets forth a legal conclusion or argument to which no response is required. To the extent a response is required, Defendants deny the allegations set forth at paragraph 67 of the Complaint.

The remaining paragraphs following paragraph 67 of the Complaint set forth legal conclusions or requests for relief to which no response is required. To the extent a response is required, Defendants deny that Plaintiff is entitled to any of the relief requested.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims alleged in the Complaint are barred because Plaintiff has failed to state any claims against Defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff by its own acts, omissions, conduct and activities is estopped from asserting the claims in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims alleged in the Complaint are barred due to its waiver of claims against Defendants.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims alleged in the Complaint are barred due to the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims alleged in the Complaint are barred because Plaintiff lacks standing to assert the claims.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims alleged in the Complaint are barred since the acts complained of were done with the knowledge and consent of Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims alleged in the Complaint are barred as the claims set forth are subject to resolution via arbitration pursuant to the Arbitration Clause in the Transfer Agreement.

## EIGHTH AFFIRMATIVE DEFENSE

Defendants hereby put Plaintiff on notice that they intend to rely upon such further defenses and counterclaims as are developed during the course of discovery in this matter. Defendants reserve the right to amend this Answer accordingly.

Respectfully submitted,

Dated:  October 18, 2007   **KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**

By: _____/s/ David T. Case_____
David T. Case (D.C. Bar No. 384062)
1601 K Street, N.W.
Washington, D.C. 20006
Tel:  (202) 778-9000
Fax:  (202) 778-9100

Counsel for Defendants
Armenian Genocide Museum and Memorial, Inc., Hirair Hovnanian, Anoush Mathevosian, Van Krikorian, and the Armenian Assembly of America, Inc

# Armenian Genocide Museum and Memorial, Inc.
## 1140 19th Street, NW, Suite 600, Washington, DC 20036
Phone: 202-383-9009, Web: www.armenian-genocide.org

FOR IMMEDIATE RELEASE
September 5, 2007
Web: www.armenian-genocide.org

CONTACT: Rouben Adalian
Phone: (202) 383-9009
E-mail: ani@agmm.org

## Armenian Genocide Museum and Memorial Begins Conversion of Historic Washington, DC Sites into a New Museum

Washington, DC – The Armenian Genocide Museum and Memorial (AGMM) announced today that its Building and Operations Committee signed contracts with Washington area firms specializing in museum planning and construction to begin the development and construction of a stellar museum in the historic National Bank of Washington building and adjacent properties.

AGMM selected two firms previously invited to submit proposals for the site. The Committee awarded its phase one museum planning contract to the prestigious firm of Gallagher & Associates, www.gallagherdesign.com, which specializes in the planning, design and management of innovative, informative, and immersive experiences for museums, learning facilities and visitor centers. Based in the Washington area, this premier museum planning firm has steered to completion numerous projects ranging from exhibit and visitor centers at Jamestown Settlement in Virginia and the Gettysburg National Battlefield in Pennsylvania, to a multimedia re-creation of the 1969 Woodstock Music Festival in New York. Significantly, Gallagher & Associates was also selected by the United States National Archives to showcase its vast collection of historic documents in a new permanent exhibit on the Washington Mall. The firm also designed the Montreal Holocaust Museum and has commenced master planning for the new Woodrow Wilson Presidential Museum.

The Committee also awarded a phase one contract to the firm of Martinez & Johnson Architecture, www.mjarchitecture.com, which is recognized in Washington for its expertise in the design of complex, multi-functional facilities, as well as the restoration of architecturally significant buildings. Most recently the firm renovated the Boston Opera House, regarded as a masterpiece of American Baroque architecture. Among many other projects in the District of Columbia, Martinez & Johnson renovated and converted the landmark Gothic Revival structure known as the Alban Towers facing the National Cathedral. The firm will be preparing plans for the complete renovation and restoration of the onetime bank structure, whose exterior and interior are designated as landmarks on the National Register of Historic Buildings, as well as its conversion into a public space for exhibit and community use.

The two firms also have a track record of cooperation on a number of museum projects including the National Museum of Civil War Medicine in Frederick, Maryland, and the National Music Center and Museum in Washington, DC. Presently they are collaborating on The Artists Hall of Honor and Museum of the Mississippi Arts and Entertainment Center.

For more information, please contact the Armenian National Institute at 202-383-9009.

**Editor's Note: Photograph attached.**

**Caption:** Landmark Washington building at the corner of 14th and G Streets, NW, the former National Bank of Washington site and future Armenian Genocide Museum and Memorial.

NR#2007-001

