UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| The Cafesjian Family Foundation, Inc., individually and on behalf of the Armenian Genocide Museum and Memorial, Inc.,<br><br>   Plaintiff,<br><br>  v.<br><br>Armenian Genocide Museum and Memorial, Inc., Hirair Hovnanian, Anoush Mathevosian, Van Krikorian and the Armenian Assembly of America, Inc.,<br><br>   Defendants. | Civil File No. 07-1746 (RWR)<br><br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION** |

**INTRODUCTION**

Defendants have arbitrarily and unilaterally excluded CFF from AGM&M corporate governance and, without proper trustee authorization, proceeded to plan and develop a project that conflicts with AGM&M's charter documents, corporate obligations, and charitable purpose. Defendants have endeavored to create the "Armenian Genocide Museum of America" without regard to CFF's input and in contravention of AGM&M by-laws.

The purported justification for excluding CFF is a contrived conflict of interest supposedly arising from reversionary interests attached to CFF's gifts. Yet these conditions upon the contributions were known to all from the outset. And, CFF's rights to have a say about the project and to get the property back if the development is not realized by 2010 were *sine qua non* prerequisites to the donations. And before the recent AGM&M's board of trustee coup, conflict of interest allegations were never raised even though the reversion has always been in place.

2116433v2

In the absence of an injunction, AGM&M will continue to ostracize CFF from museum planning, will construct an inferior edifice that mocks donor intent, and will sell real estate that was specifically designated for museum and memorial purposes. The status quo must be maintained pending resolution on the merits.[1]

**ARGUMENT**

I.    **CFF HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS**

"[M]eetings of a corporation or association should be conducted in compliance with the constitution and bylaws. Only votes taken in compliance with these rules can effect binding actions." *Nat'l Dev. Co. v. Trusteeship of Woodland Lakes*, 643 F. Supp. 561, 563 (E.D. Mo. 1986). Corporate actions that exceed the scope of the charter documents must be set aside as ultra vires. *See Wolgin v. Simon*, 722 F.2d 389, 393 (8th Cir. 1983).[2]

The record demonstrates that a minority of the trustees have proceeded without proper corporate authority. The AGM&M by-laws require that all AGM&M actions "shall be decided

---

[1]    Plaintiff renews its request for a hearing on this matter. Plaintiff's lead counsel, Timothy Thornton, will attend the Court's pretrial scheduling conference that is scheduled for December 19, 2007 at 10:30 a.m., and is available for oral argument.

[2]    Plaintiff's Application for Preliminary Injunction is based on Count I of the Verified Complaint, which is brought by CFF in its individual capacity against AGM&M. (Verified Compl. Count I.) CFF, as an initial donor with trustee appointment prerogative, has standing to enjoin the ultra vires actions of AGM&M. *See, e.g.*, *Board of Directors of the Wash. City Orphan Asylum v. Board of Trustees of the Washington City Orphan Asylum*, 798 A.2d 1068 (D.C. 2002). The preliminary injunction application is not based on the derivative claims, and the merits of those claims are not now before the Court. Regardless, CFF has complied with the pleading requirements of Federal Rule of Civil Procedure 23.1: the complaint is verified and specifically alleges that "any demand by CFF to the Board of Directors would have been futile because either the Trustees would be dead locked or Hovnanian, Mathevosian, Kirkorian and the Assembly would continue to exclude the CFF designated Trustee from participation in the formulation of the Trustees' response." (*See, e.g.*, Verified Compl. ¶¶ 47, 53, 58, 67.) In any event, issues regarding the propriety of plaintiff's standing can be easily remedied by an amendment of the pleadings. The parties addressed potential pleading deficiencies during their Rule 26(f) planning meeting, and defendants were not opposed to allowing an amendment of the Verified Complaint to correct any standing technicalities, if one was deemed necessary.

by an 80 percent affirmative vote of the Trustees present at a meeting where a quorum is present." (Verified Compl. Ex. B § 2.7.)  Any motion to exclude a trustee must be unanimously approved.  (*Id.* § 2.17.)  The shenanigans on May 7, 2007 – and the subsequent actions of AGM&M – occurred without the requisite quorum vote.

The motion to exclude Waters from the meeting was not unanimously approved by the quorum – only two of the three non-CFF trustees voted.  (Waters Aff. Ex. 4.)  More importantly, any purported removal of Waters could not vitiate CFF's franchise; the by-laws expressly provide that "[u]pon removal by a vote of the Trustees . . . the appointed successor to that Trustee shall become Trustee." (Verified Compl. Ex. B § 2.17.)  Thus, regardless of Waters' qualifications, CFF retained the right to designate a trustee to participate in governance and to exercise three votes.

In contravention of the by-laws, the non-CFF trustees improperly excluded CFF from the May 7, 2007 meeting which rendered all subsequent AGM&M action void *ab initio*.  Defendants pretend that Waters voluntarily left the meeting.  The transcript, however, reveals that Hovnanian and Krikorian intended to grill Waters and filibuster action until CFF participation was thwarted.

If that were not enough, the minutes of the May 7, 2007 meeting uncover that the actions purportedly taken after Waters was driven out were not supported by 80 percent of the three-person quorum.[3]  (Carey Aff. Ex. 12.)  The 80 percent of the quorum requirement mandates that all three trustees vote in favor of a proposed action.  (Verified Compl. Ex. B § 2.7.)  As the minutes reflect, each motion only attracted two votes.  (Carey Aff. Ex. 12.)  For instance, Krikorian moved that a building and operations committee be formed.  (*Id.*)  This motion was seconded by Hovnanian and drew no other supporting votes.  (*Id.*)  Without an affirmative vote

---

[3]    CFF has requested a full transcript of the May 7, 2007 meeting which defendants have refused to produce.

by the third non-CFF trustee, the proposed actions did not garner the required 80 percent of the quorum approval.[4]  The delegation of authority to a building and operations committee therefore contravenes the authority conferred by the AGM&M by-laws and cannot be binding.  This would be true even if CFF's suffrage had been validly denied.

The exclusion of Waters from the May 7, 2007 meeting and the subsequent machinations of creating a building and operations committee contravene AGM&M's corporate documents: neither were supported by a proper vote of AGM&M trustees.  In *Owen v. Board of Directors of Washington City Orphan Asylum*, the rump trustees were enjoined from exercising unilateral authority and from "acting on behalf of the organization without the concurrence of the Board." 888 A.2d 255, 261 (D.C. 2005).  The *Higginsville Memorial Post 6270 v. Benton* court similarly set aside the VFW's attempt to exercise a repurchase option because the post failed to obtain the by-law required vote with two-thirds approval.  108 S.W.3d 28, 33-34 (Mo. Ct. App. 2003).

Like in *Owen* and *Higginsville*, AGM&M has purported to act without the requisite trustee-super-majority approval.   Accordingly AGM&M's ultra vires actions cannot stand. Because there is a likelihood of success on the merits of Count I of the Verified Complaint and because this case presents questions "going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for deliberative investigation," this factor weighs heavily in CFF's favor.  *See Omar v. Harvey*, 416 F. Supp. 2d 19, 22 (D.D.C. 2006).

---

[4]    Defendants disingenuously posit that CFF is not entitled to cast three trustee votes. (Defs. Br. at 6 n. 8.)  They argue that since all of CFF's $17.85 million pledge has not been fully funded, CFF can only exercise two votes.  Applying defendants' reasoning, Hovnanian, who has pledged $5 million yet only funded $1.5 million, can have no votes. (Carey Aff. Ex. 15.)  Thus any purported action authorized by him would be invalid.   In that case rather than being supported by two votes, the spurious May 7 motions did not even have a second.

II.    **CFF WILL SUFFER IRREPARABLE HARM**

At the center of this dispute is real estate donated by CFF for the benefit of AGM&M. Pursuant to AGM&M's charter documents, CFF is responsible and entitled to ensure that AGM&M's actions conform to its charitable purpose, contractual commitments, and charter documents. AGM&M's receipt of CFF's donations was conditioned upon the recognition of these rights. Yet the capricious exclusion of CFF from AGM&M governance and from project planning and development oversight prevents CFF from satisfying these duties. Defendants would have their actions, supposedly on behalf of AGM&M, insulated from scrutiny as well as challenge. If AGM&M continues to alter the real estate in the absence of proper authority, irreparable harm would be wreaked upon both CFF and AGM&M.

Defendants demur that the development of an inferior museum does not constitute irreparable injury because the injury would be "pecuniary or reputation-type." (Defs. Br. at 21.) To the contrary, the erection of a second-rate institution would irreparably debase the condition of the real estate and misuse donations that were designated for a museum and memorial project that would occupy the bank building and four adjacent properties and be approved by the board of trustees.

Money damages cannot compensate for this harm: construction of the bank building will result in permanent modifications to the historically significant structure, impeding the development of the commemorative structure that was originally envisioned. Allowing a piddling development to proceed would impair CFF's ability and obligation to develop a grandiose museum and memorial that honors AGM&M's corporate obligations, charitable objective, and Armenian cause: such harm cannot be quantified. *Young Men's Christian Assoc. v. Covington*, 484 A.2d 589, 593 (D.C. 1984) (physical deterioration of building constituted

irreparable harm because it would contravene trust purposes).  As a supporter of a charitable corporation, no financial benefit inures to CFF.

The threat of harm is immediate:  AGM&M has announced that Phase I and Phase II contracts have been awarded and development of the "Armenian Genocide Museum of America" is at hand.  As proposed the project would only occupy the site of the bank building – enabling AGM&M to "downsize" the construction and sell the four adjacent properties even though that real estate was specifically designated for the <u>development</u> of the museum and memorial.  (*See* Verified Compl. Ex. C § 3.1.)

Upon completion of some dwarfed undertaking, defendants would certainly proclaim development success in an attempt to forfeit CFF's reversionary rights.  Because real property lies at the heart of this dispute – which necessarily implicates irreparable harm – an injunction should issue to enjoin further development or alienation of the real estate.  *Phillips v. Sager*, 276 F. 625, 627 (D.C. Cir. 1921) (real estate parcel at center of dispute "should be held in status quo to await the determination of this suit"); *Miller v. District of Columbia*, No. 06-1935, 2006 WL 3361504 (D.D.C. Nov. 20, 2006) ("real estate constitutes a unique interest").  This factor favors injunctive relief.

## III.    <u>THE BALANCE OF HARMS WEIGHS IN FAVOR OF AN INJUNCTION</u>

AGM&M proffers that any injunction prohibiting the development of the stunted museum could cause the property to revert to the original donors.  Yet, CFF only seeks to enjoin AGM&M from denying CFF's right to participate in corporate governance and from indulging unauthorized corporate action.  If AGM&M persists in excluding CFF and defying its charter documents, AGM&M's actions will be void and its corporate purpose would be frustrated.

The attempt to develop the inferior museum would have to be undone.  And using a substandard development to defeat CFF's reversionary intent would unquestionably inflict

irreparable harm.    An injunction pending resolution of the merits ensures that AGM&M's corporate conduct will be proper, lawful, and legitimate.[5]

## IV.    THE PUBLIC INTEREST IS SERVED

Allowing AGM&M to disregard its by-laws despoils the public interest and condones the malfeasance of the non-CFF trustees.  *Melissa Industrial Develop. Corp. v. N. Collin Water Supply Corp.*, 316 F. Supp. 2d 421, 432 (E.D. Tex. 2004).    The public interest will only be served when the museum project proceeds in accordance with AGM&M by-laws and subject to board of trustees oversight.  An injunction would not stymie progress or deprive the public of a museum – instead equitable relief would ensure that the project is developed pursuant to proper corporate authority and that AGM&M's charitable assets are appropriately employed and expended.  The public interest is served by holding AGM&M to its charter documents.

## CONCLUSION

AGM&M must adhere to its by-laws and contractual obligations: any corporate conduct that defies these responsibilities cannot be brooked.  All stakeholders understood from the time of AGM&M's creation that the by-laws and the reversionary conditions placed upon CFF's donations required the trustees to cooperate and achieve a consensus regarding project development.    No single faction would dictate the institutional decision-making.    This governance structure enabled Hovnanian's obstinance to frustrate all progress.    When CFF attempted to hand over AGM&M leadership in hopes of fostering an accord, Hovnanian and his

---

[5]    CFF is committed to ensuring that the Armenian-American community receives the opportunity to support a museum and memorial that recognizes their perseverance and dignity. For years CFF made every effort to develop the project; such efforts were consistently rebuffed by Hovnanian and the Assembly trustee.  Since the onset of the litigation, CFF has attempted to amicably resolve this dispute, only to be met with scorn and arrogance from defendants. Repeated offers to mediate this dispute before sitting and retired federal jurists have been rejected out-of-hand.

sycophants exploited the opportunity to seize control over the organization and to pirate CFF's donations without regard to the conditions on purposes for those gifts.

The continued exclusion of CFF from AGM&M governance and project development in the absence of proper corporate authority must be enjoined.  Because CFF has satisfied its burden, the Court should issue an injunction to prevent AGM&M from further board or development activity without CFF participation.

Dated: December 13, 2007

**BRIGGS AND MORGAN, P.A.**


By:   s/ Molly M. Borg
     Timothy R. Thornton
     Molly M. Borg
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2157
(612) 977-8400
*Admitted Pro Hac Vice*
**AND**

**HOGAN AND HARTSON LLP**


By:     s/ Peter C. Lallas
     Ty Cobb (D.C. Bar No. 270736)
     Peter C. Lallas (D.C. Bar No. 495944)
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600

**ATTORNEYS FOR DEFENDANT THE
CAFESJIAN FAMILY FOUNDATION**