**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The Cafesjian Family Foundation, Inc., Individually and on behalf of the Armenian Genocide Museum and Memorial, Inc.<br><br>     Plaintiff,<br><br>v.<br><br>The Armenian Genocide Museum and Memorial, Inc., Hirair Hovnanian, Anoush Mathevosian, Van Krikorian, and the Armenian Assembly of America, Inc.<br><br>     Defendants. | Civil File No. 1:07-cv-01746 (RWR) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR IMMEDIATE HEARING ON
PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**

Plaintiffs' Motion for an Immediate Hearing on Their Application for a Preliminary Injunction ("Motion for Immediate Hearing") is replete with misinterpretations and misrepresentations of fact. While the Defendants submit that there is no need for a hearing on this case and that it could and should be dismissed based on what is presently before the court as a matter of law[1], see Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), since Plaintiffs repeatedly follow this course of conduct in their document submissions in all the pending cases between the parties, Defendants feel compelled to correct these perversions of fact in this response.

First, at the December 19, 2007 conference, the Court requested status information on the museum development and whether Defendants could make assurances that any groundbreaking,

---

[1] Defendants' Motion to Dismiss sets out several bases for dismissal, including the fact that the Plaintiffs have no standing to bring this lawsuit, and that they cannot show that Defendants breached their fiduciary duty under Stern v. Lucy Webb Hayes Nat'l Training School for Deaconesses & Missionaries, 381 F. Supp. 1003, 1015 (D.D.C. 1974).

construction, or demolition would not occur before the end of January, by which date the mediator, Magistrate Judge Alan Kay, and the parties, would have reported on the progress of the settlement discussions. The Court, at that time, ordered that a joint status report be filed by January 18, 2008, which would allow the parties some time after the scheduled January 7, 2008 conference with Judge Kay to determine whether the settlement discussions were or were not successful. The Court further noted that the earliest time a hearing could be held was the end of January, and the Court's preference was to combine consideration of the application for a preliminary injunction with a full hearing on the merits of the underlying motion for injunction. The date for the requested Status Report was subsequently extended to February 22, 2008, at the request of Judge Kay and with the assent of the parties.

Neither the Judge's Orders subsequent to the December 19, 2007 hearing nor the parties' Joint Status Report submitted on February 21, 2008 included any directive to the Defendants to refrain from modifying or altering any of the properties in dispute, or to advise Plaintiffs and the Court of any project developments, as Plaintiffs claim in the Motion for Immediate Hearing. As the Court was informed by counsel for the Defendants on December 19, 2007 (and again on December 28, 2007 via a supplemental Status Memorandum), no groundbreaking, construction, or demolition was anticipated prior to that time and, in fact, none occurred.

Plaintiffs' accusation that one of the Defendants, Van Z. Krikorian ("Krikorian"), "snuck out of the courthouse to appear before the District of Columbia Historic Commission Preservation Review Board (HPRB)" is a mischaracterization of what occurred. Krikorian informed Judge Kay he was leaving and informed Judge Kay on his return of the fact that the HPRB had approved the defendants' preliminary plans to turn the old bank building into a museum. The HPRB was presented with the architectural plans for the museum and neither

Krikorian nor any other of the defendants were under any obligation to notify the plaintiffs about the meeting, which was noticed as a public meeting according to the law in both February and March identifying the consideration of the museum's plans on its agenda. Furthermore, Krikorian, who is the Chair of the Building and Operations Committee of Defendant the Armenian Genocide Museum and Memorial, Inc. ("AGM&M"), had been given the authority to make this presentation at a duly authorized meeting of the AGM&M board.[2]

Approval of the proposed museum design by the HPRB is a necessary and important step toward building the museum. Plaintiffs' allegation that Defendants are pursuing a plan "that defies AGM&M's founding mission and donor intent" and are developing an "inferior museum" could not be further from the truth and is belied by the statements of Chairman Tersh Boasberg at the HPRB hearing, complimenting the AGM&M and its team for the quality of its proposal and the professionalism of its presentation.

Plaintiffs' claim that Defendants are not respecting the Court's so-called "admonition" about maintaining the status quo is not only a mischaracterization of the Court's instructions but is totally and completely inaccurate. First, the Court's purported "admonition" is more accurately described as an inquiry regarding whether groundbreaking, construction, or demolition was anticipated, and, to the extent it was an "admonition," expired at the end of January. Moreover, even if there was an "admonition" with continuing force, no actions for groundbreaking, construction, or demolition have been taken or are presently scheduled.

---

[2] The AGM&M board met on May 7, 2007, with a quorum, including Plaintiff John Waters, being present. At that meeting, the Board voted unanimously (Waters having left the meeting voluntarily) to delegate authority to the Building and Operations Committee to take all actions necessary to complete the building of the museum and its adjacent grounds. See Minutes of May 7, 2007 Board Meeting, Part 2 (hereinafter "Minutes Pt. 2"), attached to Affidavit of Naoka E. Carey submitted in support of Defendants' Motion to Dismiss at Exhibit 12.

The real reason for Plaintiffs' Motion for Immediate Hearing, as well as all the other cases they have brought against Defendants, is to cause as much delay as possible in an attempt to trigger the reversionary clause under which the properties abutting the museum would revert to Plaintiffs. Plaintiffs have no interest in participating in the building of the museum, and their disingenuous claim that the museum which Defendants are planning to build is of low quality is purely heuristic on their part, and unsupported by the evidence.

Plaintiffs have been excluded from the AGM&M governance and project planning not by Defendants, but by their own actions. When, after being shown an architectural plan prepared at the request of the Plaintiff Waters' employer, Gerard L. Cafesjian -- a plan that would never have been approved by the HPRB because of its obvious incompatibility with the neighborhood and the fact that it made no provision for historical preservation and restoration -- the other members of the AGM&M Board of Trustees asked Cafesjian for explanations of what he and Waters had accomplished in the effort to build the museum during their oversight of the project from 2003 until 2006. Rather than admit they had done nothing, Cafesjian and Waters responded by resigning their duties as officers. Furthermore, before Plaintiff Waters resigned as the Secretary-Treasurer of the AGM&M, in a clear breach of his fiduciary duty to, and in conflict of interest with, the AGM&M, he signed and recorded in the District of Columbia Registry of Deeds a Memorandum of Agreement Reserving Rights on behalf of both Plaintiff Cafesjian Family Foundation (of which he was also an officer) and, purportedly, Defendant AGM&M, placing a cloud on the title of all the properties at issue.[3] Finally, at the May 7, 2007 meeting of the AGM&M board, which Plaintiffs admit was duly noticed, Waters, representing the Cafesjian

---

[3] The AGM&M brought suit in the Superior Court of the District of Columbia to remove the cloud on the title, which case was subsequently transferred to the U.S. District Court for the District of Columbia. See, Civ. File No. 07-cv-1259 (CKK).

interests, was present and voluntarily departed the meeting prior to its conclusion, stating: "I am leaving the meeting under protest. Anything that you do from this point forward, you can consider it to be a quorum if you like because it says that it is, anything you vote on you can do anything you want, but anyway my participation in this meeting is over."[4]  Contrary to the unsupported allegations in their Motion for Immediate Hearing, there has been no injury to Plaintiffs, much less unquantifiable injury.

The allegations that Defendants "flouted their obligation to negotiate in good faith" is not only patently inaccurate but also a violation of the confidentiality terms of the settlement discussions on March 27, 2008, as clearly set out by Magistrate Judge Kay at the outset of the mediation with both lawyers and parties present.  Contrary to Plaintiffs' assertion that they "eagerly participated" and "made concessions," it was Plaintiffs, and not Defendants, who rejected Judge Kay's final compromise suggestion and immediately left for the airport thereby causing the mediation to end prematurely.

If the Court insists that a hearing is necessary, Defendants respectfully request that the hearing on the Application for Preliminary Injunction and the hearing on the merits of the ultimate injunction be combined, as the Court previously suggested.

Defendants' lead counsel will not be available for hearing until April 24, and then will be available on April 28, April 30, May 1, and May 2, 2008.[5]

---

[4] See Minutes of May 7, 2007 Board Meeting, Part 1 (hereinafter "Minutes Pt. 1"), attached to Affidavit of Naoka E. Carey submitted in support of Defendants' Motion to Dismiss at Exhibit 12.

[5] Defendants' lead counsel is scheduled for surgery on April 9, 2008 and will be unable to travel prior to April 24.  Plaintiffs' lead counsel has been informed of this situation and indicated his agreement to the later dates.

                Respectfully submitted,

Dated:  April 7, 2008        KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

By:    /s/  David. T. Case
       David T. Case (D.C. Bar No. 384062)
       Bruce H. Nielson (D.C. Bar No. 414440)
       1601 K Street, N.W.
       Washington, D.C. 20006
       Tel:  (202) 778-9000
       Fax:  (202) 778-9100

       AND

       /s/
       Arnold R. Rosenfeld (MA Bar No. 428860)
       Naoka E. Carey (MA Bar No. 655312)
       One Lincoln Street
       Boston, MA 02111
       Tel: (617) 261-3155
       Fax: (617) 261-3175